## WARD *v.* McMATH.

### Opinion delivered May 15, 1922.

1. PERPETUITIES—DEED TO UNINCORPORATED ASSOCIATION.—A deed conveying land to certain individuals as trustees of a camp of United Confederate Veterans, and their successors and assigns, such camp being an unincorporated voluntary association of ex-Confederate Veterans, having a constitution and by-laws for their government, *held* not obnoxious to the rule against perpetuities.

2. TRUSTS—REFORMATION OF DEED—JURISDICTION OF CHANCERY.— Where a trust deed conveying land was executed to certain trustees to hold for a certain camp of Confederate Veterans, chancery may properly assume jurisdiction of a suit between members of the camp to reform such deed so as to enlarge the trust so as to include other beneficiaries than members of the camp.

3. REFORMATION OF INSTRUMENTS—PARTIES.—The widow and heirs of a deceased grantor in a deed were necessary parties to a suit to reform the deed, though the dispute arose between members of the grantee, an unincorporated association.

Appeal from Franklin Chancery Court; *J. V. Bourland,* Chancellor; reversed.

*Chew & Ford* and *A. A. McDonald,* for appellants.

An incorporated association held its property subject to a majority vote of its members. 46 Ark. 291; 122 Ark. 7; 98 Pac. 897.

Property owned by an unincorporated voluntary association belongs to the association. 98 Pac. 897.

A body indefinite as to members may act by a majority of the members present at any legal meeting, no matter how small a proportion they may constitute of the whole number entitled to be present. 23 Am. & Eng. Ency. of Law, p. 589.

A quorum is, to all intents and purposes, as much the body to which it pertains as if every member were present. 25 Am. & Eng. Ency. of Law, p. 1132, p. 2.

The action of a majority of the church members at a regular meeting is the action of the church. 122 Ark. 7. Especially where they adhere to the doctrine of the church. 46 Ark. 291. They are entitled to the control of its property. 43 Am. St. Rep. 798; 25 Am. & Eng. Ency. of Law, p. 1135, sec. 3; 98 Pac. 903.

*T. A. Pettigrew,* for appellees.

The court properly enjoined the parties from interfering with the trustees in the discharge of their duties, and had jurisdiction to instruct the trustees as to the performance of their duties. 4 Ark. 302; 60 Ark. 503; C. & M. Dig., sec. 1098.

A resulting trust should have been declared in favor of those who subscribed the money. 40 Ark. 62; 200 S. W. 1029.

WOOD, J. The appellees, plaintiffs below (hereafter called plaintiffs), instituted this action against the appellants, defendants below (hereafter called defendants). The complaint alleged in substance that the plaintiffs and defendants were members of Pat Cleburne Camp of Confederate Veterans No. 191 of Charleston, Arkansas, (hereafter called camp) and the only members of the

camp; that in conferences between representative of the people in the vicinity of Charleston who were interested in Fourth of July celebrations, and representatives of the camp (who, respectively, had been holding their cele- brations and annual reunions at different points in the vicinity of Charleston prior to the year 1907), it was de- cided that the camp and the people generally, not mem- bers of the camp, should jointly purchase, for the benefit of the camp and the people, in order to enable them, re- spectively, to hold their reunions and Fourth of July cele- brations, the west half (W1/2) of the southwest quarter (SW 1/4) of section 8 in township 7 north, range 28 west, in Franklin County, Arkansas, to be used as a public park by the camp and the people generally for the pur- poses above set forth; that it was agreed and understood that the deed should be executed to certain parties, mem- bers of the camp, and their successors in trust for the use and benefit of the camp, in holding their annual reunions, and for the benefit of the public in the vicinity generally in holding their celebrations, it being understood that the dates of the reunions and celebrations should in no man- ner conflict. It is further alleged that funds were solicited, subscribed, and paid by various persons for the purchase money of the land, upon the representation that the land would be purchased, held and used for the above pur- poses. It was alleged that the funds raised by such sub- scriptions, and from the holding of celebrations and re- unions, were used in the purchase of the above described land; that it was agreed and understood by all parties in interest that when the members of the camp, because of the infirmities of old age, or otherwise, were unable to further execute the trust, the Sons of Veterans should be made trustees, and when there were no longer any Sons of Veterans, or when such Sons were unable from any cause to execute the trust, then the town of Charleston should be named as trustee to hold the land in trust for a public park, in order to effectuate the purposes above designated.

It is further alleged that it was agreed and understood by all parties in interest that when J. P. Falconer, the owner of the land, and his wife executed their deed to the same, the purposes of the trust as above mentioned should be expressly stated in the deed; that through mistake and oversight of the draftsman of the deed the lands above described were conveyed to J. K. P. Holt, Tom McFerran, Webster·Flannagan, Geo. W. Hill and W. P. McMath, trustees of the camp, and to their successors and assigns, to have and to hold the same to said trustees for said camp and their successors and assigns forever.  It is alleged that certain of the trustees originally named in the deed had died, and others had been appointed by the chancery court to succeed them; and since their appointment another one of the original trustees had died and his successor has not been named; that the plaintiffs were now the only trustees of the property.

The complaint further set forth that "there had been a dissension among the members of the camp, and that some of the defendants had ignored the rights and privileges of all the beneficiaries in the deed of trust except the members of the camp, and claim that the members of the camp have the exclusive right to the possession of the land;" that they were denying the plaintiffs and the other beneficiaries in the deed of trust the rights thereby secured to them, all to their great and irreparable injury.  The complaint concludes with a prayer that the deed be reformed so as to read and state the purposes of the trust and the beneficiaries thereof, as above stated, and that the trust as thus expressed be perpetuated, and for an order restraining the defendants from interfering with the execution of the trust as thus expressed; and that a trustee be appointed to fill the now existing vacancy, and for all relief.

The defendants, in their answer, after denying all the material allegations of the complaint, set up that the camp was duly organized as such and had adopted a con-

stitution and by-laws for the government of its organization; that the property described in the complaint belonged to the camp; that it is the sole and exclusive owner thereof under a deed executed September 12, 1907, from J. P. Falconer and Fannie T. Falconer, his wife, which was duly recorded on the 21st day of November, 1908. The deed is set out *in haec verba* in the answer. The defendants then further allege that upon the execution of the deed the camp took charge of the property and made improvements thereon, which they set forth; that the camp had been in the open, notorious, adverse, and continuous possession of the land since the 12th of September, 1907. The defendants therefore pleaded the seven years statute of limitations.

The defendants averred that J. P. Falconer, the grantor in the deed, was dead; that T. P. Winchester, the draftsman of the deed, was dead; that J. K. P. Holt, Confederate Veteran and one of the trustees, who procured the services of T. P. Winchester to write the deed, was dead. The defendants alleged that the plaintiffs had delayed bringing their suit to reform the deed for thirteen years, and that under the circumstances they were barred by laches from maintaining the suit. They alleged that the deed was drawn as directed and was executed as intended by the parties who donated the fund to purchase the lands, and by the vendor who executed the same, to establish a Confederate park for the use and benefit of Confederate Veterans, and not for the public. The answer concluded with a prayer that the complaint be dismissed for want of equity.

The deed in controversy, a copy of which was made an exhibit to the answer, was in evidence before the court, and much testimony taken by the respective parties to sustain the allegations of their pleadings and their respective contentions as set up therein. The court found the facts to be as substantially set forth in the allegations of the complaint, that the words "their successors" were intended by all parties thereto to mean, "said organiza-

tions of Sons and Daughters of ex-Confederate veterans, and, in default of such organizations, the incorporated town of Charleston; * * * and that the term 'assigns' was intended to impart a right of sale in the trustees by resolution of the camp so directing, only, however, in the event and for the purpose of securing a more desirable park by exchange or sale and repurchase."

After making its findings, the court refused to enter a decree reforming the deed, for the above reasons, and for the further reason that the widow and heirs of Col. J. P. Falconer were not made parties. The court further found as follows: "Because all members of the said Pat Cleburne Camp being parties, as are also all of the trustees in the said deed, or their successors, duly constituted and appointed; accordingly, under the evidence, the equity of all parties hereto is to have decreed a construction of said deed, along with decretal instruction to said trustees by way of declaring the full and true nature of said trust." The court also found a vacancy existing in the board of trustees, and appointed Captain M. D. Brown, a member of the camp, to fill the vacancy. After finding and declaring the purposes of the trust to be substantially as set forth in the complaint of the plaintiffs, and charging the trustees that certain duties were incumbent upon them as such, and directing them to perform these duties, the court concluded its decree as follows: "It is therefore considered, ordered and decreed as hereinbefore recited and found, specifically and generally in all respects. It is further decreed that the complaint of the plaintiffs, so far as it prays reformation of the said deed, is dismissed, for the reasons stated in the findings. The defendants and each of them are enjoined from in any way interfering with the trustees in the discharge of their duties as such and in the collecting of any funds derived from concessions at any time whatever," etc.

The defendants objected to all the findings and decree of the court except that which denied to the plaintiffs

a reformation of the deed and dismissing their complaint as to this for want of equity. From the decree of the court adverse to their contention the defendants prayed and were granted an appeal.

1. While much phraseology and unusual verbiage is indulged in by the parties in their pleadings as well as by the court in its findings and decree, yet when the pleadings are analyzed, this lawsuit resolves itself into these simple issues, namely: whether or not the appellees are entitled to have a reformation of the deed in controversy, and whether or not the court should appoint a trustee as the successor to D. Rogers, deceased, who had been previously appointed by the chancery court of Franklin County as a trustee, and who had accepted such appointment and had been serving in that capacity.

The pleadings and testimony, which are exceedingly voluminous, show that the cause progressed to a hearing upon the above issues. The complaint does not allege the form of the organization of the camp, but the allegations of the answer and the undisputed testimony show that the camp is an unincorporated voluntary association of persons composed exclusively of ex-Confederate veterans, which adopted a constitution and by-laws for its government. The constitution sets forth the name of the camp, designates the officers thereof, prescribes their duties, and the objects of the organization. The testimony shows that the camp was in existence before the purchase of the park. By the terms of the deed the grantor expressly conveys to the parties named therein, designated "trustees of Pat Cleburne Camp United Confederate Veterans No. 191, and unto their successors and assigns forever," for the consideration named therein, the land in controversy, describing it. The *habendum* clause of the deed is as follows: "To have and to hold the same unto the said trustees for said Pat Cleburne Camp United Confederate Veterans No. 191, their successors and assigns, forever."

The above language of the deed shows clearly that the land conveyed was trust property to be held in trust by the trustees, their successors and assigns, for the use and benefit of the camp. The legal title was thus vested, by the unmistakable language of the deed, in the trustees as individuals, while the equitable title was vested in, and held by, those who then constituted the members of the camp, and who could be readily ascertained according to the constitution and by-laws of the association governing its membership. The deed was thus not obnoxious to the rule against perpetuities which prevents alienation. *Old Society* v. *Crocker,* 119 Mass. 1-23; Wrightington on Unincorporated Associations, § 60, p. 240; Devlin on Real Estate, § 190, p. 258, and cases cited.

In the case of *Monk* v. *Little,* 122 Ark. 7, we held, quoting syllabus, that "courts of chancery may properly assume jurisdiction of a dispute between different factions of a church organization where property rights are involved." In the case at bar the plaintiffs and the defendants, as the allegations of the complaint and the undisputed testimony show, are members of the camp. The complaint alleged that "there had been an unfortunate dissension among the members of the camp. Some of the defendants have ignored the rights and privileges of all the beneficiaries of said deed of trust and claim that the members of said camp have the exclusive right to said land and the exclusive right to possession thereof." Inasmuch as some of the members of the camp are suing other members of the camp to have the deed reformed so as to enlarge the trust to include other beneficiaries than members of the camp, it is manifest that property rights are involved. By analogy to the doctrine announced in *Monk* v. *Little, supra,* it occurs to us that the facts alleged in the complaint clearly state a cause of action giving the chancery court jurisdiction of the subject-matter in controversy between the parties; that is, as to whether or not the deed should be reformed. The trial court ruled correctly that the widow and heirs of

the grantor in the deed were necessary parties to the action for reformation. Having so ruled, the court should have proceeded no further until the necessary parties were brought in. All the further findings and the decree of the court based thereon, were beyond the legitimate scope of the pleadings and beyond the jurisdiction of the court. For, if the court had no jurisdiction to reform the deed and declare a resulting trust because the necessary parties were not before it, then obviously it could not retain jurisdiction and enter a decree construing the deed, declaring the trust, and giving directions to the trustees, just as if the necessary parties had been before the court, and as if the deed had been in fact reformed by the plaintiffs. The decree of the court expressly declares "that the complaint of the plaintiffs, so far as it prays reformation of said deed, is dismissed," yet the decree also recites: "It is therefore considered, ordered, and decreed as hereinbefore recited and found specially and generally in all respects." The "hereinbefore" findings and recitals show that the court had as effectually granted the plaintiffs all the relief they prayed as if it had formally and technically declared the reformation of the deed as prayed by them. While ostensibly denying the plaintiffs the relief of reformation sought by them, nevertheless the decree, as a whole, in reality does grant them such relief. This the court could not do with the parties then before the court.

Inasmuch as the cause must be reversed and remanded, we will not, in advance of the determination of the issue as to whether the deed shall be reformed, decide whether the chancery court should have appointed a trustee to fill the vacancy caused by the death of trustee Rogers. For the error in proceeding to construe the deed in the manner shown before the issue as to the reformation thereof is determined, the decree is reversed, and the cause will be remanded with directions, if the parties so desire, to make the widow and heirs of Colonel Falconer, and others if necessary, parties, to take proof, and for

such other and further proceedings herein as the parties may elect to adopt, according to law and not inconsistent with this opinion.