RURAL REALTY COMPANY *v.* BUCKNER,
SPECIAL ADMINISTRATOR.

4-6513                                              158 S. W. 2d 17

Opinion delivered January 12, 1942.

*Shane & Fendler,* for appellant.

*J. Graham Sudbury, Frank C. Douglas* and *C. M. Buck,* for appellees.

GRIFFIN SMITH, C. J.   Rural Realty Company, a corporation, sued on five notes of $320 each, executed by John H. and James M. Buckner in 1936, representing balance due on purchase price of sixty acres.[1]  As security the Buckners conveyed the lands to Roy Church in trust. Prayer of the complaint was that a lien be declared, with decree of foreclosure.

John H. Buckner's separate answer was filed January 8, 1940, by his attorney, Frank C. Douglas, who denied all allegations.  It was admitted that on December 5, 1929, the realty company sold 40 acres[2] to John H. and James M. Buckner, but there was an averment that the grantor did not at the time of conveyance own the property.  The defendants, it was contended, had been deprived of possession, and through wrongful acts of the plaintiff had been damaged more than $1,600.  Certain payments on the notes were alleged.[3]

Lula Buckner[4] answered separately, adopting the allegations of John H. Buckner; but in addition she alleged purchase by John H. and James Buckner (Decem-

---

[1] Prayer was for judgment on the principal notes, amounting to $1,600, with interest.  Maturity of the notes was December 15, 1936, 1937, 1938, 1939, and 1940.  The deed of trust given as security contained an acceleration clause, which was invoked.  Mable Buckner, wife of James M. Buckner, was made a defendant, as was Lula Buckner.  The land was described as southwest quarter of the southeast quarter, and the south half of the south half of the north half of the southeast quarter of section nine, township fifteen north, range thirteen west, in Mississippi county.

[2] The conveyance was by warranty deed.

[3] These payments were:   December 12, 1931, $200; April 5, 1932, $250; December 18, 1933, $175; November 19, 1934, $400; and described the southwest half of the southeast half of section nine, township fifteen north, range thirteen east.

[4] Lula Buckner is the mother of John H. and James M. Buckner.

ber, 1929) of the southwest quarter of the southeast quarter. It was insisted that several bales of cotton were delivered to plaintiff in 1931, proceeds of which should have been added to cash payments made by John H. Buckner. There was the further contention that at the time of purchase of the forty acres by her sons, Lula conveyed in trust the south twenty acres of the north half of the southeast quarter. When the indebtedness was renewed in October, 1935, she did not know that title to the forty acres had been forfeited to the state through non-payment of taxes. Her prayer was that plaintiff be not permitted to fix a lien on her twenty acres; that her sons had paid more than a third of the original debt in respect of the forty acres, and that equity should dismiss.

July 24, 1940, the realty company and Church, trustee,[5] filed a substituted complaint against James M. and John H. Buckner, Lula Buckner, Lois L. Douglas, and Frank C. Douglas.[6]

Allegations of pleadings formerly filed were adopted, but in addition it was stated that Lois L. Douglas claimed title to the north half of the southwest quarter of the southeast quarter, and the south half of the southwest quarter of the southeast quarter of section nine, under a deed from the state land commissioner.[7] The state's title was confirmed by decree of September 24, 1934, under authority of Act 296 of 1929. At the time of forfeiture title was in Ranier & Connell Cotton Company by virtue of a commissioner's deed. The company conveyed to J. C. Ranier and Hugh Connell April 25, 1929, by deed, and these grantees (Sept. 19, 1929) conveyed to Rural Realty Company. September 5, 1929, Rural Realty Company conveyed to James M. and John H. Buckner. October 25, 1935, the Buckners conveyed to Church, trustee, the southwest quarter of the southeast quarter, and the south half of the south half of the north half of

[5] Alvin E. Fink, substitute trustee.

[6] Frank C. and Lois L. Douglas are husband and wife. B. A. Lynch, trustee for Winnie E. Reynolds, and Winnie Reynolds, were made defendants.

[7] The state's deed was dated February 3, 1936, and was based upon sale for nonpayment of state and county taxes for 1926.

the southeast quarter. Adverse possession in themselves and their predecessors was alleged by plaintiffs for more than twenty years, "except during the past year or more."

The complaint enumerated eighteen reasons why sale of the land was void. Therefore, it is contended, Lois L. Douglas did not acquire title through the state's deed.

November 18, 1937, Frank C. and Lois L. Douglas conveyed to B. A. Lynch, trustee for Winnie E. Reynolds, to secure an indebtedness of $750.

All of the conveyances in derogation of the realty company's interests were alleged to be clouds upon the company's title. There is the statement that tender was made to Lois L. Douglas July 23, 1940, "in an amount sufficient to take care of any expenses, taxes and improvements in connection with the state tax title she claims on the 40-acre tract heretofore described." The tender was declined.

Prayer of the substituted complaint was for judgment against James M. and John H. Buckner, Mable Buckner, and Lula Buckner, for $1,600, as heretofore mentioned, with other items; for foreclosure of the trust deed; and that the amount to which Lois L. Douglas was entitled be determined.

Mrs. Douglas filed answer and cross complaint August 22, 1940. All allegations were denied. Affirmatively, she alleged that the north half of the southwest quarter of the southeast quarter, and the south half of the southwest quarter of the southeast quarter of section nine were subject to general state and county taxes for 1926; that the land was sold to the state in regular manner, duly confirmed, and legally purchased by her.[8] It was also averred that the proceeding constituted a collateral attack on the confirmation decree.

After receiving the state deed February 3, 1936, Mrs. Douglas claims she immediately took possession by

---

[8] It was further said: "This defendant pleads the statute of limitations as a defense to the attempt by the plaintiff now to claim any rights to redeem said lands from the sale, forfeiture, and confirmation of title in the state." Pope's Digest, § 8925.

tenant. This possession continued without question or interruption for more than two years. She also alleged that the south half of the southwest quarter of the southeast quarter became delinquent in 1926 for betterments due Drainage District No. 17, and that in consequence of suit by the district's commissioners the lien was foreclosed, with purchase by the district, and sale to her.[9] The amount expended for all purposes incidental to the land was itemized as $1,180.42.[10]

Separate answer was filed by Winnie E. Reynolds. The loan heretofore mentioned was alleged to have been made November 18, 1937, secured by deed in trust covering the forty-acre tract.

In an amended answer the Buckners claimed that Rural Realty Company (Dec. 5, 1929), for a consideration of $1,810, conveyed by warranty deed to James M. and John H. Buckner the southwest quarter of the southeast quarter of section nine. Cash paid was $10, the balance having been evidenced by five notes of $360 each.[11] A vendor's lien was retained. Following default, renewal notes were executed October 25, 1935. This is the series of $320 notes referred to in the first paragraph of this opinion, and they were given in renewal of unpaid indebtedness secured by vendor's lien on the southwest quarter of the southeast quarter of section nine. The Buckners contend that when the transaction was consummated the realty company did not have title, and such notes are therefore voidable for want of consideration. Cancellation of the notes and deed of trust was prayed.

In an amendment to their substituted complaint, the realty company alleges that the claim of Lois L. Douglas to the south half of the southwest quarter of the south-

---

[9] Condition of the lands when acquired was described, and there was identification of improvements. It was alleged that when title was not questioned after two years, adjoining landowners cooperated in providing drainage.

[10] Although the answer shows that the items aggregate $1,180.42, correct addition seems to be $1,182.42, a difference of $2 in favor of appellee, Lois L. Douglas.

[11] The notes were payable December 1, 1930, and on December 1 of each year to and including 1934.

east quarter of section nine under the drainage district's conveyance was untenable because the transaction constituted a redemption by Mrs. Douglas.

The chancellor found against Mrs. Douglas and others in respect of the claim that title passed to the forty acres by reason of the state land commissioner's deed. There was also a finding that payment by Mrs. Douglas of drainage ditch taxes was a redemption as distinguished from a purchase. No appeal was taken from these findings; hence, correctness of the court's ruling is not an issue to be determined here. *Baker* v. *State*, 199 Ark. 1005, 137 S. W. 2d 938; *Dent* v. *Adkisson, ante,* p. 176, 157 S. W. 2d 16.

The decree found that Mrs. Douglas was protected by § 8925 of Pope's Digest because, with color of title, she had been in possession more than two years. The statute is printed as a footnote.[12]

We think the chancellor's construction of § 8925 was erroneous unless the realty company's attempt to foreclose its lien was "an action for the recovery of land or for the possession thereof." The statute has been in effect since January 10, 1857.[13]

The realty company conveyed in 1929, and since that time until trial it had been the holder of a vendor's lien, or was a mortgagee not in possession. As we have already seen, no consideration can be given appellees' contention that the company sold after a tax forfeiture had destroyed its equitable rights by vesting legal title

---

[12] "No action for the recovery of any lands, or for the possession thereof against any person or persons, their heirs and assigns, who may hold such lands by virtue of a purchase thereof at a sale by the collector, or commissioner of state lands, for the nonpayment of taxes, or who may have purchased the same from the state by virtue of any act providing for the sale of lands forfeited to the state for the nonpayment of taxes, or who may hold such land under a donation deed from the state, or who shall have held two years actual adverse possession under a donation certificate from the state, shall be maintained, unless it appears that the plaintiff, his ancestors, predecessors, or grantors, was seized or possessed of the lands in question within two years next before the commencement of such suit or action, . . ."

[13] See Act 7, approved January 26, 1937.

elsewhere—this for the reason, as the court found, that the state's title was void, and the drainage district permitted a redemption. Since there was no appeal from these findings, we must presume that the realty company's equities were intact, and it had a right to deal with the Buckners, who had the legal title, subject to the liens.

In short, appellant only undertook to have the court declare, and then foreclose, its lien.

A headnote to *Wright, Executor, v. Walker, et al.,* 30 Ark. 44, is: "The statute requiring suit for the recovery of land sold at tax sale to be brought within two years only applies to suits for the recovery or possession of the land, *and not to a proceeding to foreclose a mortgage.*" [14]

Under our practice foreclosure proceedings are in no sense "actions for the recovery of land or for the possession thereof."

Section 8918 of Pope's Digest requires all suits, either at law or in equity, for the recovery of lands, etc., to be brought within seven years. In *White v. White,* 198 Ark. 740, 131 S. W. 2d 4, the statute was construed to apply only to the recovery of lands, ". . . and does not govern suits to foreclose mortgages." The phraseology in §§ 8918 and 8925 is similar. [See *Young v. Blocker, Trustee,* 201 Ark. 802, 146 S. W. 2d 902.] [15]

In *Holliday v. Wade,* 117 Fed. 2d 154, the court of appeals for the Fifth circuit construed § 591 of the General Statutes of Florida, Compiled General Laws of 1927. The enactment (strikingly similar to § 8925 of Pope's Digest) provides that "When the holder of a tax deed goes into actual possession, occupancy and use of the land embraced in such tax deed, and so continues for four years, no suit for the recovery of the possession thereof shall be brought by a former owner or other adverse claimant, unless such suit be brought within, or prior to,

[14] Italics supplied.

[15] Cf. *Duke v. State,* 56 Ark. 485, 20 S. W. 600; *Phelps v. Jackson, Admr., et al.,* 31 Ark. 272; *Kessinger v. Wilson,* 53 Ark. 400, 14 S. W. 96, 22 Am. St. Rep. 220.

the said period of four years" after the grantee has entered. The holding was that the limitation contemplated by the statute applied to controversies "founded upon the title to real property," and suit for the recovery of possession. The court said:

"In Florida a mortgage conveys no title, but is only a lien. . . . A suit to foreclose is not one founded on title, nor for possession. . . . The mortgagee cannot sue for possession, and it is no concern of his whom the mortgagor may admit to possession or who may seize it and thereby acquire as against the mortgagor the right to keep it."

Having reached the conclusion that § 8925 of Pope's Digest did not bar appellant's right to foreclose its mortgage, it follows that the decree, in part, must be reversed. Lois L. Douglas should be allowed credit for the value of improvements she made and taxes paid against which must be charged rents and profits. *Wilkinson* v. *Nottingham, ante,* p. 270, 157 S. W. 2d 201.

The decree should be in favor of Rural Realty Company for the debt due it, with lien upon the sixty acres. Mrs. Douglas' lien is prior to that of the realty company. Title to the land remains in the Buckners. Any excess over debt and improvements belongs to the Buckners.

The decree is affirmed insofar as it avoided the state land commissioner's deed, and in its holding that payment of betterments to Drainage District No. 17 was a redemption. In other respects it is reversed. The cause is remanded with directions to proceed in a manner not inconsistent with this opinion.