BAKER *v*. STATE, USE INDEPENDENCE COUNTY.

4-7970                                    197 S. W. 2d 759

Opinion delivered November 18, 1946.

Rehearing denied December 23, 1946.

*R. W. Tucker,* for appellant.

*Harry L. Ponder, Jr.,* and *W. M. Thompson,* for appellee.

GRIFFIN SMITH, Chief Justice. Since December 31, 1936, Independence County has operated under an initiated salary act. Edgar Baker was elected Sheriff in 1942 and assumed office the following January. In April, 1945, the State Comptroller's office concluded an audit of the County's financial affairs, including the status of its officials. Copy was duly transmitted under direction of Bruce Fraser, supervisor of the audit division. It showed

that Baker, as Sheriff, owed a balance of $7,387.38. The County Judge demanded that the delinquencies be settled, in consequence of which Baker made response. In July, 1945, the Prosecuting Attorney, with W. M. Thompson as special counsel, instituted an action in Chancery Court, effect being a prayer that irregular accounts be surcharged and falsified, to the end that delinquent sums shown by the audit by realized.

The decree required the defendant to pay a total of $3,093.23, composed of four items: Amount due sheriff's salary fund for 1944, $775.05; aggregate earnings due as transfer to county general revenue fund, $786.68; fines and license items for 1944, $1,381.50; fines and license fees due for 1943, $150. Although the difference between amounts charged in the audit and that for which judgment was rendered is $4,294.15, part of this is represented by a mileage arrangement adopted in lieu of expenses; and while the salary law requires payment into the treasury and authorizes reimbursement within the limitations prescribed, Baker refused to settle under the Act and relied upon an understanding he claims was had with County Judge Adams, (now dead) who in respect of expenses is alleged to have agreed that the Sheriff might charge ten cents per mile.

It is first insisted that the decree is contrary to a preponderance of the evidence. We do not think so. Baker's testimony in his own behalf fails to give a clear picture of essential transactions. His chief insistence is that the salary law was unjust, that if its terms were complied with the Sheriff could not earn a competency, and the Act is unconstitutional because strict compliance would impose hardships. It was also argued that Chancery Court did not have jurisdiction (a) because the subject-matter had been adjudicated in County Court many months before the suit was filed, and (b) County Court first obtained jurisdiction when notice in the form of a demand was made following the Comptroller's report. Still another defense is that the salary law was not legally initiated because an indorsement shows it was filed

October 3, 1936—less than 60 days before the November election.

Finally, it is contended that if appellant is forced to comply with the law, he should be given credit for certain warrants which were unpaid January 1, 1945.

The principal grievance voiced by appellant in respect of the decree goes to the Chancellor's action in requiring payment of an amount into the salary fund, for the benefit of general revenue, equal to ten percent of the gross, and in not allowing credit for the outstanding warrants.

Bruce Fraser testified at length and was carefully cross-examined by appellant's attorney. Referring to page 76 of the audit, Fraser stated that mileage and expenses allowed under the blanket arrangement Baker claimed to have had with County Judge Adams amounted to $4,134.53 for 1944; that "services" represented $3,040.25, while Circuit Court fees and mileage paid to the Sheriff by the Circuit Clerk were $213.65. Other items, including fees from magistrate courts, brought the total to $7,866.83, of which the $3,040.25 in fees was paid to the treasurer. Attention was called to the fact that mileage and expense allowances were paid from the county general revenue fund. Mention should also be made that in dealing with fines collected, a 5% commission was deducted, amounting in one instance to $80.20. The Court correctly held that the commissions belonged to the County rather than to the Sheriff. It is of interest to note that the total charged in the decree as fines is $1,532.20, because appellant, in his so-called "response" (which was nothing more than an explanation to the County Judge by Baker which the latter sought to have adopted) conceded he owed this exact sum, saying: "Respondent admits that he owes the County of Independence the sum of $1,532.20 for fines collected, some of which have been collected since January 1, 1945, [and that] the attached statement of fines and licenses collected is the amount collected and now due the County." Under questioning Baker admitted the collections were made in 1944.

Appellant testified that during 1943 and 1944 he failed to collect $1,500 of his $200 per month salary (which was subject to the Federal withholding tax). Six warrants drawn against the county salary fund for 1943 were exhibited, five for $186 each payable to Baker and one for $97.60 in favor of Lawson Johnson, deputy, aggregating $1,399.60. Baker thinks the amounts admitted to be due the county, or found by the decree to be appropriate charges against him, should be credited with these warrants. What he overlooks is that his own delinquencies and obstinate refusal to comply with the salary law created the condition resulting in the dilemma he now seeks to avoid.[1]

A feature of the salary law is that the Sheriff and his deputies cannot receive in salaries and expenses amounts in excess of ninety percent of the earnings. We have heretofore held that a provision similar to the one

[1] Section 7 of the Salary Act is: "The Sheriff shall receive as compensation and salary the sum of $2,400 per year for performing all duties of the office, in lieu of the fees, commissions and other compensations now allowed by law, and shall receive no other or further compensation, emoluments of perquisites, either directly or indirectly, for services rendered as such Sheriff or as a result of holding the office. In addition thereto he shall be paid actual and necessary expenses of travel of himself and deputies when on business for the County, but in no event shall the salaries and expenses annually exceed ninety percent of the gross receipts of the office, and shall be payable only from such receipts. Said Sheriff shall make and attach to each claim for expenses an itemized statement, *showing the time, place and purpose of each item so expended*; (Italics supplied) and the County Court is hereby charged with the duty of examining and approving all such expense claims, same as other claims against the County, as now provided by law.

Section 12: [In respect of all officers whose salaries are fixed by Initiated Act No. 3, "except those receiving no fees"] the same fees, costs, commissions, perquisites and compensation shall be collected ". . . as [that] now or hereafter required or permitted by law to be charged by such officers for such services. All sums so earned shall be public funds, the property of the County, and the collecting officer shall receive same as trustee for the County. The said fees and other compensation shall be collected in advance of the rendition of the services, and each officer shall be charged in his settlements with all sums so earned by or accruing to the office *whether collected or not*; (Italics supplied) provided, however, . . . [and there are certain exceptions where bond is given]. . . . Each such officer shall, between the first and fifth of each month, render in duplicate a duly verified report of all sums earned by the officer during the preceding month, showing in detail the sources and amounts of said earnings, one copy of which shall be filed with the County Treasurer and the other with the County Clerk, and the reporting officer shall then pay to the County Treasurer all sums so earned and reported."

complained of is not violative of any constitutional provision. *House* v. *Brazil*, 196 Ark. 602, 219 S. W. 2d 397. The Court found that in Independence County Initiated Act No. 3—the one in question—was filed with the County Clerk (who at that time was Edgar Baker, now appellant here) September 3, and that the indorsement "October 3" was a clerical misprision. This is clearly shown by other dates in the document, and by the further fact that it was advertised in the Batesville Guard September 3d. Since October has 31 days and the general election was not held until November 3d, there was ample time for notice, and the Court correctly held that Baker had inadvertently written "October" when September was intended.[2]

We think the Court correctly held that appellant was not required to pay into the salary fund amounts assessed as fines, but not in fact collected, provided failure to collect was not the Sheriff's fault. But even if this had been erroneous, we could not correct the mistake now, because no appeal was taken from that part of the decree. Nor did the County appeal from the Court's action in not requiring appellant to pay in and then permit him to withdraw the expense items that formed a continuing course of irregularity. The law contemplates that these funds be paid into the salary account, and authorizes their withdrawal when itemized claims have been

[2] Indorsements and recitals supporting the trial Court's determination that ". . . the third day of October, 1936" was an error, are: The Salary Law, as disclosed by Independence County Court Record 609, "October Term, November 1936" Sec. 2 shows the following: "That the petition ordering the submission of said proposed Act was sufficient, as is shown by my certificate of sufficiency dated September 3, 1936." . . . Sec. 4. "That said Act was in all respects properly and legally submitted to the voters at said [November 3d] election, and there were 1,971 legal votes cast and counted for its adoption and there were 502 legal votes cast and counted against its adoption, a majority of 1,469 legal votes for adoption." Recital in Sec. 17: . . . Therefore, notice is hereby given that the question of adopting or rejecting said proposed Initiative Act will be referred to the people in the manner provided by law at the next general election to be held on November 3d, 1936, and will appear on the official ballots. . . . Witness my hand and seal of said County, in the City of Batesville, Independence County, Arkansas, on the 2d day of September, 1936. EDGAR BAKER, Clerk." And in conclusion: "That said Act was therefore legally adopted and will become effective the first day of January, 1937. In testimony whereof I have hereunto set my hand and the seal of my office on this [blank] day of November, 1936. EDGAR BAKER, Clerk."

approved by the County Court. Many of the claims are meaningless. On the basis of ten cents per mile Baker turned in demands for travel aggregating 41,315 miles in 1944. The account as filed merely lists, "Mileage for January," or whatever month was intended to be covered. The salary law does not permit blanket allowances of this nature; nor does it specifically authorize "mileage" to be allowed as such. What it does contemplate is that all claims shall be appropriately itemized, to the end that taxpayers may be informed in respect of allowances made by the Court.

The decree is in all respects affirmed.