Montgomery, Executor *v.* Blankenship.

4-9191                                    230 S. W. 2d 51

Opinion delivered May 29, 1950.

*A. L. Burford* and *Shaver, Stewart & Jones,* for appellant.

*T. B. Vance* and *James F. Vance,* for appellee.

Dunaway, J.   Disposition of some $800,000 worth of corporate stocks and $17,426.33 in cash, the property of Mrs. Ida M. Bottoms who died in Miller County, Arkansas, on December 21, 1944, at the age of 83, is involved in this appeal.

This action arose as a suit by the heirs at law of Mrs. Bottoms against Winston Montgomery, as Executor of the estate of Mrs. Bottoms and the Texarkana National Bank of Texarkana, Texas, which claimed to hold the stocks and cash in question as trustee under a trust created by the decedent.   Involved are certificates of stock in Crowell Long Leaf Lumber Co., Inc., Meridian Land & Mineral Corporation, and Crowell Land & Mineral Corporation, which will hereafter be referred to as the "Crowell Stocks."   The cash item had reverted to the decedent from a trust created by her in 1928.

Some time after the death of Mrs. Bottoms her executors filed an inventory in the Miller Probate Court, listing, among other assets, the Crowell Stocks and the cash item of $17,426.33.   Later, on advice of counsel, who had not been consulted when the inventory was originally filed, Montgomery, now sole surviving executor under the will of Mrs. Bottoms, filed in the Probate Court a petition to delete this property from said inventory.   The heirs at law of Mrs. Bottoms intervened in opposition to said deletion.   The probate judge then suggested that since the question of title to the disputed property was involved, a suit to determine this matter be brought.   The heirs at law, appellees here, then commenced the instant action in the Miller Chancery Court.

On January 27, 1944, Mrs. Bottoms went to the Texarkana National Bank.   There she executed contemporaneously a "Living Trust Agreement" and her Last Will and Testament.   Both instruments had been prepared at her request by J. K. Wadley, an old friend of Mrs. Bottoms and a stockholder and director in the bank.

At the time these instruments were executed, the Crowell Stocks were in possession of the bank, pledged as security for a loan in excess of $50,000. Under the provisions of the trust agreement these stocks, and other securities not here involved, were to be held by the bank as trustee. Mrs. Bottoms was to receive the net income of the trust for life, and at her death the income and principal of the trust estate were to be distributed to designated beneficiaries, which for the most part were various Baptist institutions. The trust agreement contained a provision that it could be "amended, modified or revoked in whole or in part by the Trustor at any time during her lifetime."

The residuary clause of Mrs. Bottoms' will reads as follows: "I give, bequeath and devise to Texarkana National Bank of Texarkana, Texas, to be added to and become a part of, and subject to all the terms and conditions of living trust created by me under date of January 27th, 1944, all of my estate remaining after paying all debts legally chargeable to same, including fees to my executors."

The Crowell Stocks were kept in possession of the Bank under its pledge at all times from the execution of the trust instrument and will until the loan was paid in full by the Executor under order of the probate court in January, 1946.

It is admitted that since no attack was made on the will within six months after it was duly probated and notice thereof published, the plaintiffs are now barred by limitations from contesting it, under the provisions of Act 401 of the Acts of 1941 (Ark. Stats. 1947 § 60-210).

It is the theory of the appellees' case that the *inter vivos* trust attempted to be created by Mrs. Bottoms was invalid for several reasons: (1) She did not have mental capacity to execute the instrument; (2) There was no delivery of the stocks and acceptance of the trust by the Bank, since it continued to hold said stocks in its capacity as creditor and not as trustee; (3) The terms of the trust are violative of the rule against perpetuities. Appellees

further contend that although the validity of the will is not now open to attack, the residuary clause therein, above quoted, was not sufficiently definite to create a testamentary trust; and that even if this was attempted by the testatrix, the trust instrument could not be incorporated by reference in the will, since it was amendable and revocable during her lifetime. Appellees therefore contend that as to the property now in litigation there was a partial intestacy and that they take as the heirs at law of the decedent.

Appellants contend that there was a valid trust created by Mrs. Bottoms on January 27, 1944; but that even if this is not so, the property in question passed to the Bank as trustee under a testamentary trust created by the residuary clause in the will. It is appellants' theory that the trust instrument was incorporated in the will by reference.

Much of the proof adduced at the trial of this cause was on the issue of the mental capacity of Mrs. Bottoms. It is unquestioned that she had been ill for many years, and admittedly on some occasions was not mentally competent. There was, however, a sharp conflict in the testimony as to her capacity at the time the challenged instruments were prepared at her request and executed by her.

The Chancellor made no special findings, either as to the competency of Mrs. Bottoms or as to any of the other issues raised by the pleadings and proof. The decree, to quote the pertinent parts reads: "The Court, being well and sufficiently advised and having jurisdiction of this cause, finds and decrees in favor of the plaintiffs and against the defendants, Winston Montgomery, as Executor of the Estate of Ida M. Bottoms, Deceased, and Texarkana National Bank of Texarkana, Texas.

.    .    .    .    .

"To all of which findings, holdings, decrees and orders of the Court, save the finding and decree with respect to the item of $17,426.33 aforesaid, the defendants Winston Montgomery, Executor of the Estate of Ida M. Bottoms, deceased, and Texarkana National Bank of Tex-

arkana, Texas, except and request that their exceptions be noted of record, which is accordingly done, and they and each of them pray and are granted an appeal to the Supreme Court of Arkansas.''

While there is a difference of opinion among the members of the court as to the validity of the *inter vivos* trust, we are unanimously of the opinion that in any event the Crowell Stocks passed to the Texarkana National Bank as trustee under the residuary clause of the will. In view of this conclusion, only those points relevant to our decision on this question need be discussed.

In accordance with the weight of authority, the rule in Arkansas is that instruments definitely identified and in existence when a will is executed may be incorporated therein by reference. *Rogers* v. *Agricola,* 176 Ark. 287, 3 S. W. 2d 26; *Kinnear* v. *Langley, Executor,* 209 Ark. 878, 192 S. W. 2d 978, discussed in 1 Arkansas Law Review 180. The general rule in regard to incorporation of a document by reference as approved by this court in the Kinnear case is as follows:

''If a will, duly executed and witnessed according to statutory requirements, incorporates into itself by reference any document or paper not so executed and witnessed, whether such paper referred to is in the form of a will, codicil, deed, or a mere list or schedule, or other written paper or document, such paper if it was in existence at the time of the execution of the will, and is identified by clear and satisfactory proof as the paper referred to, takes effect as a part of the will, and is entitled to probate as such.''

By the residuary clause in her will Mrs. Bottoms clearly devised.to the Texarkana National Bank all the residue of her estate ''to be added to and become a part of, and subject to all the terms and conditions of living trust created by me under date of January 27th, 1944.'' The extrinsic document referred to is clearly identified. Indeed there is no dispute as to the identification of the instrument sought to be incorporated by reference.

Was the trust instrument in existence when the will was executed? The undisputed testimony of the witnesses was that the trust agreement was in existence when the testatrix signed her will. J. K. Wadley, who had prepared both instruments, testified that he had done so some days prior to the date of their execution; that on January 27, he and the other two witnesses to the will came to the office of Winston Montgomery in the Bank, where both instruments were signed by Mrs. Bottoms in their presence. It is true, as appellees point out, that these witnesses were unable to say which document Mrs. Bottoms signed first, but that is immaterial. The requirement for incorporation by reference is only that the extrinsic document be in existence, not signed, and this fact is established by the undisputed proof.

The failure of the trust agreement to create a valid *inter vivos* trust when executed by Mrs. Bottoms, which we have assumed for the purpose of this decision, does not prevent the incorporation of that ''living trust agreement'' into the will by reference. In *Rogers* v. *Agricola, supra,* a prior invalid will was held to have been incorporated by reference into what the testator thought was only a codicil to an earlier will, and the two documents together constituted his ''whole will.'' As stated in 1 Page on Wills (Lifetime Ed.) § 266, p. 522: ''If incorporated by reference it makes no difference whether the original document of itself was valid at law or not. A deed invalid because it never was delivered, may be incorporated in a will. A prior defectively executed will, or the will of another person, or a part of the will of another person, may thus be incorporated. Such incorporation may prevent lapse of a legacy given by a prior will. The account books of testator may be incorporated by proper reference. The incorporated document may be treated as part of the will for the purpose of ascertaining the beneficiaries and the share to be given to each.''

An invalid deed was held incorporated in a will by reference, even though the testator in his will had referred to the property as having been already disposed

of by deed, where the court found from all the circumstances an intent on the part of the testator that the property should go to the one mentioned in the will as grantee in the deed. See *In re Dimmitt's Estate,* 141 Neb. 413, 3 N. W. 2d 752, 144 A. L. R. 704, discussed in 41 Michigan Law Review 751.

Appellees' final argument that the "living trust agreement" could not have been incorporated by reference is based upon the fact that the trust instrument was amendable and revocable. To support this contention appellees cite the case of *Atwood et al* v. *Rhode Island Hospital Trust Co. et al.,* 275 Fed. 513 (C. C. A. 1st). The case supports appellees' position, but represents the minority view. In *Koeninger* v. *Toledo Trust Co.,* 49 Ohio App. 490, 197 N. E. 419, the court allowed incorporation by reference of the unchanged portions of an amendable trust instrument. For discussion of this case see 49 Harvard Law Review 498. An amendable and revocable trust instrument was held incorporated by reference, and effect was given to three amendments made prior to the execution of the will, but not to a fourth made after execution of the will, in *President and Directors of Manhattan Co.* v. *Janowitz et al.,* 14 N. Y. Supp. 2d 375, discussed in 39 Columbia Law Review 1256. Incorporation by reference of amendable or revocable trust instruments was also permitted in *Old Colony Trust Co.* v. *Cleveland,* 291 Mass. 380, 196 N. E. 920; *Swetland* v. *Swetland,* 100 N. J. Eq. 196, 134 Atl. 822; *In the Matter of Willeys Estate,* 128 Cal. 1, 60 Pac. 471.

The general rule in this regard is stated in 1 Page on Wills (Lifetime Ed.) § 260, p. 513 as follows: "If the testator has created a trust, reserving power to amend the trust, the trust instrument may be incorporated in the will by reference, but the operative effect of the will cannot be changed by a subsequent modification of the trust instrument, if the modification is not executed in accordance with the wills act. Effect is to be given to the will and to the provisions of the trust instrument as they existed when the will was executed. No effect can be given to the subsequent modification of the trust instru-

ment if it is not executed in accordance with the act which regulates the execution of a will.''

In the case at bar no problem arises as to whether amendments to the instrument can be given effect, for no changes were ever in fact made in the instrument as it existed at the time the will was executed.

Having decided that the trust instrument was incorporated by reference in the will of Mrs. Bottoms, there is no occasion to pass upon the mental capacity of the decedent. ''If the document is of such nature and is so referred to in the will, as to comply with the requirements already given, it is treated as part of the will, and as if it were set forth therein in full.'' 1 Page on Wills (Lifetime Ed.) § 266, p. 522. Since no attack was made upon the probate of the entire will within the time provided by law, appellees cannot now single out for attack a portion of the will which was incorporated by reference and became as much a part of the will as any of its other provisions. They cannot do indirectly what they are barred by statute from doing directly.

Two other contentions of appellees bearing on the validity of the testamentary trust must be considered, however. It is urged that the terms of the trust violate the rule against perpetuities. The pertinent provision of the trust instrument reads as follows: ''The Trustee is hereby directed to pay, out of the Trust Estate, commencing upon the Trustor's death, all of the cash received from both income and principal and remaining after the payment of the Trustee's fees and expenses as hereinbefore provided, in the following manner, to-wit:

''(1) There shall be paid in semi-annual installments all of the net income and principal available in cash, to the following, in proportionate amounts, until they all shall have received the amount set up for them as follows: (Then follows a list of beneficiaries with the amount of money each is to receive.)

''(2) After the payments provided for in Article (1) of this paragraph have been made in full, then in semi-annual installments all of the balance of the avail-

able cash net income and principal of the Trust Estate shall be paid in the proportions shown, to the following:'' (Seven Baptist institutions are named to receive designated shares of the balance of the trust estate.).

Under the terms of the trust instrument as incorporated in the will, legal title to the Crowell Stocks vested immediately upon Mrs. Bottoms' death in the Bank as trustee. Equitable title likewise vested immediately in the named beneficiaries. Since there was a present vesting of both legal and equitable title, and only a postponement of full enjoyment of the estate by the charities named, the rule against perpetuities has no application in this case. See *Ward* v. *McMath,* 153 Ark. 506, 241 S. W. 3; *Garrett* v. *Mendenhall, Executor,* 209 Ark. 898, 192 S. W. 2d 972.

Appellees also contend that by seeking to sustain the validity of the *inter vivos* trust, appellants made an election of remedies and could not as an alternative defense to appellees' action, claim that the bank took the Crowell Stocks under a testamentary trust if the *inter vivos* trust failed. In appellees' complaint it was alleged that the *inter vivos* trust was invalid, that the stocks in question did not pass under the residuary clause of the will, and that the appellees took as the heirs at law when Mrs. Bottoms died intestate as to this property. The doctrine of election of remedies is not in the case. As the court said in *State Life Ins. Co. of Indianapolis* v. *Mitchell,* 126 F. 2d 867 (C. C. A. 8th) at p. 870: ''The doctrine stated in its simplest form means that, if a party has two inconsistent existing remedies on his cause of action and makes choice of one, he is precluded from thereafter pursuing the other.'' In order for the appellees in the instant case to recover, it was necessary for them to show not only that there was no valid *inter vivos* trust, but that the Crowell Stocks were not disposed of under the residuary clause in the will. In defending the issues raised by the plaintiffs, there was no ''election of remedies'' by the appellants, defendants below.

We hold that the Crowell Stocks passed to the Texarkana National Bank as trustee under a valid testa-

mentary trust created by the residuary clause of the will of Mrs. Bottoms. As to the cash item of $17,426.33 an additional question is presented.

It is appellees' position that appellants did not pray an appeal from the chancellor's holding in favor of appellees as to the cash item, and therefore that this question is not before us. As already pointed out, the trial court made no special findings, but found "in favor of the plaintiffs and against the defendants" and ordered the stock certificates and cash turned over to the executor. Appellants excepted to all the findings and holdings of the chancellor "save the finding and decree with respect to the item of $17,426.33 aforesaid." Appellants argue that the decree of the trial court simply meant that the cash item was ordered delivered to the executor, and if the trust instrument was held incorporated in the residuary clause of the will by the court, then the executor would return the money to the bank as trustee and hence there was no necessity for an appeal from the court's finding as to this item.

The decree finding "in favor of the plaintiffs and against the defendants" was a finding against appellants as to all issues in the case. The effect of this was to hold that the appellees, as heirs at law of Mrs. Bottoms, would take title to the cash as against any claim thereto by the bank as trustee. Since no appeal was taken from the ruling of the chancellor as to the cash item, we cannot consider the correctness of that part of the decree. *Baker* v. *State, Use of Independence County,* 210 Ark. 690, 197 S. W. 2d 759; *Rural Realty Co.* v. *Buckner,* 203 Ark. 474, 158 S. W. 2d 17.

The decree is affirmed in part, reversed in part, and the cause remanded for proceedings in accordance with this opinion.