McDONALD *v.* SHAW.

Opinion delivered December 17, 1906.

| 81 | 235 |
|----|-----|
| f86 | 218 |

1.  WILL—AMBIGUITY IN DESIGNATING BENEFICIARY.—A bequest or devise will not fail because of a mere inaccuracy in the designation of the beneficiary, if the meaning of the testator can be gathered with reasonable certainty from the instrument itself, or if the identity of the object of his bounty can be shown by extrinsic evidence, which is always admissible wherever there is ambiguity in designating the beneficiary. (Page 240.)

2.  TRUST—APPOINTMENT OF TRUSTEE IN SUCCESSION.—A devise to the pastor of a certain church of property to be used for the purpose of educating boys and young men of the church constitutes the pastors of the church in succession as the trustees under the will. (Page 241.)

3.  SAME—INDEFINITENESS.—A devise of property to a trustee for the purpose of "helping to educate poor Catholic children" is not too indefinite to be enforced. (Page 241.)

4.  SAME.—A devise of property to a trustee "for the purpose of helping to establish a school in said parish for the education of Catholic boys and for helping to educate young men of the parish for the priesthood" is not too indefinite. (Page 243.)

5.  PUBLIC CHARITY—DEFINITION.—A public charity is a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burden of government. (Page 243.)

6.  TRUST—TRUSTEE'S POWER TO SELL.—A devise of real property in fee to a trustee for educational purposes impliedly confers upon the trustee power to sell and convey such real property. (Page 243.)

Appeal from Sebastian Chancery Court; *J. Virgil Bourland,* Chancellor; affirmed.

*Ira D. Oglesby,* for appellant.

The powers exercised by the English chancery courts over what we call the *cy pres* doctrine are not exercised by the courts of this country. 9 Am. Dec. 577, and note; 44 Am. Dec. 98, and note; 64 Am. St. Rep. 755, and note. If the beneficiaries are to be determined by arbitrary and uncertain standards, the bequest is void. 9 Am. Dec. 586. The purpose of the trust must appear from instrument creating it. 9 How. U. S. 55.

A gift for charitable uses must be sufficiently definite that a court of chancery can determine from the will the beneficiaries and carry out the design of the testator. Courts of chancery do not permit trustees, of their motion, to break in upon the capital of a trust estate. 6 Hump. 219.

*Youmans & Youmans,* for appellees.

A charitable devise to the vestrymen of a church, an unincorporated religious body, is a good charitable devise (74 Ark. 545), but the devisee in the present case is a corporation. The devisee, being the only person that fills the description given in the will, is the proper person to receive the legacy. 48 Atl. 737; 53 L. R. A. 711; 87 Md. 664; 40 Atl. 894; 60 Conn. 472; 22 Atl. 848; 111 Mich. 168; 69 N. W. 251. The rule announced in 4 Wheat. 1 has since been shown to be erroneous. 2 How. 127; 24 *Id.* 465; 95 U. S. 303. A direction for a division of real estate is held to carry an implied power of sale. 28 Am. & Eng. Enc. Law, (2 Ed.), 1003. It is not a question as to whether a sale would be wise, but whether the terms of the will carry an implied power of sale. 50 S. E. 597. Even a nonuser or a misuser does not avoid the trust. 74 Fed. 854.

*U. M. Rose,* for appellees.

Wills are favorably construed in order to carry out the will of the testator. 31 Ark. 581; 13 *Id.* 518. Courts look upon charities with favor, and will carry them into effect if possible consistent with the rules of law. Perry on Trusts, § 699, 709, 716, 717. It immaterial that the beneficiaries are indefinite or not ascertained. 6 Cyc. 904; 74 Ark. 546; 91 Mo. 45; 60 Am. R. 226. Parol evidence is admissible to identify the trustee. 62 Md. 275; 50 Am. Dec. 219; 6 Cyc. § 936. The devises in this case for charitable purposes are valid. 107 U. S. 163; *Ib.* 174; 41 Fed. 371; 91 Mo. 45; 6 Am. Dec. 226. In the case of a charity it is immaterial that the beneficiaries are indefinite, or that the trustee is uncertain. 6 Cyc. 904. In a case of this kind the trust will not fail for want of a trustee, as the court will appoint one. 2 Perry on Trusts, § 722, 731; 4 Ark. 302; 66 *Id.* 166. Uncertainty as to the individual beneficiaries is characteristic of a charitable use. 2 Perry, Trusts, § 732. Any other rule would subvert the foundation of all public charity. *Ib.*

McCULLOCH, J.  This appeal involves the construction of the will of Mary Hare, deceased, the validity of certain bequests therein made and the right to sell, during the life of her daughter, Ella Hare, the real estate of the testator.  The clauses of the will under consideration are the following:

"I give and bequeath to Rev. Lawrence Smyth and the Rev. Michael Smyth the sum of two hundred dollars each, and request that they offer the Holy Sacrifice of the Mass occasional for the eternal repose of the souls of myself and my husband.

"I give, devise and bequeath to the Convent of the Sisters of Mercy at Fort Smith, known as Saint Anne's Convent, one-half of all my real estate, real and personal, after deducting the legacies and bequests mentioned in this my last will and testament, for the support and maintenance of my daughter, Ella Hare, during her life, and after the death of my said daughter Ella I give, devise and bequeath to the said Sisters of Mercy the said one-half of my estate, real and personal, for the purpose of helping to educate poor Catholic children.

"I give, devise and bequeath to the pastor of the parish of the Immaculate Conception of Fort Smith in the State of Arkansas one-half of all my estate, real and personal, to be used by the said pastor for the purpose of helping to establish a school in said parish for the education of Catholic boys and for helping to educate young men of the parish for the priesthood."

The testatrix, Mary Hare, resided at Fort Smith, and was a member of the Roman Catholic Church called the Church of the Immaculate Conception.  This church is sometimes called the "Irish Catholic Church" because of the fact that its membership is made up largely of Irish Catholics, and in contradistinction from another church organization in the same city named St. Bonifacius Catholic Church and sometimes called the "German Catholic Church."

There was a local body of Sisters of Mercy connected with the Church of the Immaculate Conception conducting a school on their property adjoining the church, and commonly known as "Sisters of Mercy of St. Anne's Academy."  Also sometimes called "St. Anne's Convent," and sometimes "Sisters' Convent."  In the laws of the church such an organization is denominated as "Chapter of the Sisters of Mercy," and is perpetuated by the

incoming of new sisters from year to year. The title of the executive officer of the chapter is "Mother Superior," and the office is filled by election of chapter sisters at intervals of three years. When the sisters first enter the convent, they serve for a time as postulants, and later become members of the chapter, and are called "Sisters of Mercy." These organizations are auxiliaries of the Catholic Church, and have fixed rules for their operation.

The General Assembly enacted a statute, which was approved December 20, 1860, as follows:

"An Act to Incorporate the Sisters of Mercy of the Female Academies of Helena, Little Rock and Fort Smith.

"Section 1. Be it enacted by the General Assembly of the State of Arkansas.

"That the Sisters of Mercy of the female academies of Helena, Little Rock, and Fort Smith, and their successors, respectively, are hereby constituted bodies corporate and politic, with succession, each, for ninety-nine years, under the respective corporate names and styles of 'The Sisters of Mercy of the Female Academy of Helena,' 'The Sisters of Mercy of the Female Academy of Little Rock' and 'The Sisters of Mercy of the Female Academy of Fort Smith,' and by those names applicable to each corporate body as if contained in separate acts; shall have power to make contracts, and to sue and be sued, and shall have a common seal; and each corporation, respectively, shall have full power to form such constitution and by-laws, or such rules and regulations, as may be necessary and needful for the government of each of said academies respectively; and to promote proper discipline and education and learning therein and to provide for the selection of superiors or directors, or other officers therein, at any time; also power to use and preserve their property, real, personal and mixed, and to have, hold and enjoy the same, which may be at any time given, donated, granted, sold or bequeathed to the said sisters, or said academies, respectively, for the use thereof; and to sell, mortgage or pledge the same, for the benefits of the said academies, or for the use thereof, respectively; and finally to do and perform all other things that may be proper to be done for the advancement of learning, and the interest and objects of the said corporations,

respectively; but nothing shall be allowed contrary to the Constitution and laws of this State.

"Sec. 2.   No misnomer shall defeat or annul any grant, gift, devise or bequest thereto, or contract therewith, whenever the real intent sufficiently appears.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"Sec. 4. . This act shall be construed as if it were three separate charters for said corporations, and shall be judicially noticed without pleading, and shall be in force from its passage."

The chancellor in his decree construed the will as follows: "The bequest to 'the Convent of the Sisters of Mercy at Fort Smith, known as 'St. Anne's Convent,' is construed to mean that the Sisters of Mercy of the Female Academy of Fort Smith, a corporation, was made trustee under this clause of the will; that said Sisters of Mercy took no beneficial interest, but did take as trustees one-half of said estate, after deducting special legacies, for the support and maintenance of Ella Hare, daughter of testator, during her life, and at the death of said Ella Hare take the said one-half in trust for the purpose of helping to educate poor Catholic children, and the latter bequest was for charitable uses, and was and is a valid bequest to said Sisters of Mercy of the Female Academy of Fort Smith for the purposes mentioned in said will.

"The bequest to the pastor of the Church of the Immaculate Conception is construed to mean that the pastor of the Church of the Immaculate Conception at the death of said testator and his successor or successors as pastor took the property therein bequeathed in trust for the purposes mentioned in that clause of said will; that the said trust was and is a valid one, and that James Brady, present pastor of the Church of the Immaculate Conception, holds said property under the provisions of said will as trustee for the uses and purposes therein mentioned.

"That the Sisters of Mercy of the Female Academy of Fort Smith and James Brady, pastor of the Church of the Immaculate Conception, had the right to sell the property devised as aforesaid and held in trust by them, respectively, as hereinabove decreed, and that the deed of conveyance made to defendant, Tillman Shaw, by said James Brady and the Sisters of Mercy of

the Female Academy of Fort Smith by Sister Aloysius O'Connell, Mother Superior, was and is valid."

Did the chancellor reach the correct conclusion?

1. It is contended, first, that the court erred in construing the language of the will "Convent of the Sisters of Mercy at Fort Smith, known as St. Anne's Convent" to mean and refer to "Sisters of Mercy of the Female Academy of Fort Smith," a corporation created by the statute quoted above; that said so-called "Convent of the Sisters of Mercy at Fort Smith, known as St. Anne's Convent," was not capable of acting as trustee, that the devise was void, and that on the death of the testatrix the title vested by inheritance in her daughter.

It is an elementary rule of construction that a bequest or devise will not fail because of a mere inaccuracy in the designation of the beneficiary, where the meaning of the testator can be gathered with reasonable certainty from the instrument itself, or where the identity of the object of his bounty can be shown by extrinsic evidence; and such evidence is always admissible for the purpose of identifying the beneficiary, where there is uncertainty or ambiguity in the designation. This rule applies to corporations as well as to individuals, and to trustees as well as to those taking for their own benefit. 1 Jarman on Wills, (6th Ed.) p. 347; Page on Wills, § 538, 539; 6 Cyc. p. 936.

"Misnomer," says Mr. Page, "is especially frequent in devises to charitable corporations. The real names of such corporations are often never used and never known by people generally; and many testators do not feel the need, in preparing a will, of getting the real name of the proposed beneficiary. They prefer to guess at the name. Hence the number of adjudicated cases on this point. It is an elementary principle that where a corporation is indicated in a will by an erroneous name, such a mistake will not avoid the gift if it is possible by means used, or by intrinsic evidence, to identify the corporation intended as beneficiary with sufficient certainty. * * * Where the name given to the corporation is not that of any existing corporation, but closely resembles the name of a corporation engaged in a similar work, the gift will be held a gift to such corporation if the evidence indicates that this corporation was intended by testator.

The following cases illustrate the various applications of this principle by the courts, and fully sustain the chancellor in his conclusion: *Reilly v. Union Protestant Infirmary,* 87 Md. 664; *Woman's Missionary Society* v. *Mead,* 131 Ill. 338; *Chambers* v. *Higgins,* (Ky.) 49 S. W. 436; *Newell's Appeal,* 24 Pa. St. 197; *Straw* v. *East Main Conference,* 67 Me. 493; *Russell* v. *Allen,* 107 U. S. 167; *Gilmer* v. *Stone,* 120 U. S. 586; *Cook* v. *Universalist General Convention,* (Mich.) 101 N. W. 217; *Oades* v. *Marsh,* 111 Mich. 168; *Bristol* v. *Ontario Orphan Asylum,* 60 Conn. 472.

It is also argued, in this connection, that the statute quoted did not *ipso facto* create the corporation named, but only authorized its organization, which was never done. We think that the statute did create the corporation, and that corporate functions have been exercised thereunder. Real estate to be used, and which has since been continuously used, for the purposes contemplated by the act of incorporation was conveyed to the corporation *eo nomine,* and an organization has been regularly kept up with an executive officer at the head.

2. It is contended that the decree of one-half of the property of the testatrix in the next clause of the will was to the pastor of the Church of the Immaculate Conception then in office, that the trust was conferred upon the individual, and not upon the office, and that the court erred in decreeing that James Brady, the succeeding pastor of the church, could take the property as successor in trust. We think it is quite clear that the testatrix meant to constitute the pastors of the church in succession as the trustees under the will.

3. The main ground for the assault upon the validity of the two devises is that they are both too indefinite to be enforceable in designating the beneficiaries. It is contended that the language "helping to educate poor Catholic children" in one clause, and "for the purpose of helping to establish a school in said parish for the education of Catholic boys and for helping to educate young men for the priesthood," in the other clause, is too indefinite to manifest the intention of the testatrix, and that the trust is void and cannot be carried out.

In *Biscoe* v. *Thweatt,* 74 Ark. 545, where the court had under consideration a devise to the "Vestrymen of St. John's

Episcopal Church of Helena, Arkansas, and their successors in office," * * * "for the benefit of said St. John's Church as they may deem best for its interest," it was held that the statute of charitable uses, 43 Elizabeth, c. 4, is in force in this State, that an unincorporated religious body is a public charity, so as to be capable of receiving the testator's bounty as such charity, and that the devise was not too indefinite on account of the discretion vested in the trustees. The court there quoted with approval the following language of the Supreme Court of the United States, speaking of trusts for public charitable purposes: "They may, and indeed, must, be for the benefit of an indefinite number of persons; for, if all the beneficiaries are designated, the trust lacks the essential elements of indefiniteness, which is one characteristic of a legal charity. If the founder describes the general nature of the charitable trust, he may leave the details of its administration to be settled by trustees under the superintendence of a court of chancery." *Russell* v. *Allen, supra.*

In the note to a case of *Fifield* v. *Van Wyck,* 64 Am. St. Rep. 745, the author states (at page 771) the following rule as being sustained by a majority of the adjudged cases: "The donor may, however, appoint trustees, and invest them with discretion to apply the fund toward a charitable purpose specified by him, leaving them, in its application, to select, from numerous persons or institutions, which shall receive the benefit of his bounty, or the testator may specify the charitable purpose in terms so general that the trustees must necessarily exercise a discretion in determining which of many purposes falling within the general description they shall seek to promote or accomplish." Counsel for appellant challenge the statement of the author that this doctrine is sustained by the weight of authority, but we conclude that it is, and that this court has approved it in *Biscoe* v. *Thweatt, supra.*

Mr. Perry announces substantially the same doctrine as follows: "It is immaterial how uncertain the beneficiaries or objects are if the court by a true construction of the instrument has power to appoint trustees to exercise the discretion or power of making the beneficiaries as certain as the nature of the trust requires them to be. Uncertainty as to the individual beneficiaries is characteristic of a charitable use." 2 Perry on Trusts, § 732.

Now, after having ascertained that the will designates as trustee an incorporated educational institution with purposes and powers defined by the statute creating it, the difficulty of interpreting the meaning of the testatrix in providing that the devise shall be for the purpose of helping to educate poor Catholic children entirely vanishes. There is left no uncertainty in her specification of the charitable purpose, and her intention to vest in the trustee a discretion in its application to select out of the class designated the individual recipients of the bounty is clearly implied. It is plain that the object of the devise was to assist in the education, at the institution named, of such poor Catholic children as the trustee, acting through its proper officials, shall elect. That there are, and will ever continue to be, individuals falling within that class, goes without saying.

Nor is there any uncertainty in the design of the testatrix in providing that the other half of her property shall "be used by said pastor for the purpose of helping to establish a school in said parish for the education of Catholic boys and for helping to educate young men of the parish for the priesthood." A class to be the object of the bounty is plainly designated, and the selection of the individuals out of that class is left to the discretion of the trustee.

It will hardly be said that either of these devises does not fall within the definition of a public charity. The definition given by Mr. Justice Gray in *Jackson* v. *Phillips,* 14 Allen (Mass.), 539, and generally accepted as correct by the modern American authorities, is that it is "a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings, or works or otherwise lessening the burdens of government." 6 Cyc. p. 900 and cases cited. By every test and according to every definition, gifts for educational purposes are public charities. *Vidal* v. *Girard's Executors,* 2 How. (U. S.), 127.

3. Lastly, it is contended that the trustees named had no power to sell and convey, during the life of Ella Hare, the real estate devised under the will. The terms of the devise do

not confer upon the trustee less power over the disposition of the property during the life of Ella Hare than it does after her death. The devise is absolute; and unless the power of disposition at any time after the death of the testatrix is conferred, then it is not conferred at all, and the property must be held in perpetuity. It is undoubtedly the well settled rule that trustees for infants can never, unless power is conferred by the instrument creating the trust, break into the capital of the trust fund or dispose of the *corpus* of the estate for any purpose, yet we think that the power of disposition for the purposes named in the will is plainly implied from the terms and provisions of the instrument itself. The only limitation upon the power of the trustee is as to the use of the property. During the life of Ella Hare one-half of the estate must be used for her support and maintenance, and for no other purpose. It is not contended that there had been any abuse of the power of sale, if it exists at all, nor that there has been any misappropriation of the proceeds. The objection is only to the exercise of the power at all. The authority of the Mother Superior to execute a conveyance for and in the name of the corporation is also questioned, but we think that her authority is sufficiently shown by the resolution passed by the Sisters of Mercy composing the chapter.

We find no error in the decree, and the same is in all things affirmed.

HILL, C. J., disqualified and not participating.