## TULLIS *v.* MINCHEW

5-3488                                           388 S. W. 2d 393

Opinion Delivered March 29, 1965.

*Clifton Bond,* for appellant.

*Coleman, Gantt, Ramsay & Cox, Smith & Smith,* for appellee.

GEORGE ROSE SMITH, J. This is an appeal from a probate court order finding that the appellant, Ezra Tullis, was in fact mentioned in the will of his grandfather, J. M. Minchew, and is therefore not entitled to share in the estate as a pretermitted heir. The appellant contends that the trial court erred in concluding that a reference in the will to "J. R. Tullos" actually meant the appellant, Ezra Tullis.

Minchew was survived by two sons, a daughter, and the appellant, the son of another daughter who prede-

ceased the testator. There were other grandchildren, but Ezra is the only one who should have been mentioned in the will, for the parents of the others were living at the testator's death. Ark. Stat. Ann. § 60-607 (Supp. 1963).

By the will the bulk of Minchew's estate was left in equal parts to his two sons. In effect Minchew disinherited his living daughter, Dolly Winchew Tullis (whose name was misspelled as "Tullos"), by leaving her only fifty dollars. This is the provision giving rise to the present dispute: "I devise and bequeath unto my grandson, J. R. Tullos, the sum of Twenty-five ($25.00) Dollars to be paid out of the proceeds of my estate."

We think the trial court was right in finding that the reference to J. R. Tullos was intended to mean Junior Tullis. Ezra's father's name was Ezra Benjamin Tullis. Although there is some conflict in the evidence, the preponderating testimony shows that Ezra was often called "Junior" by the members of his family. He himself admits that he was occasionally so called, but he denies that his grandfather, the testator, ever called him Junior. That there is no other testimony by members of the family upon the latter point is understandable, for Ezra saw his grandfather rather infrequently and not at all duing the last five years of his life.

The attorney who prepared the will testified: "[H]e wanted to leave his grandson, the son of his dead daughter, $25.00 . . . I asked him what his name was, and he said it was Junior Tullis. And I asked him how to write it and he said, 'Write it capital J. capital R. Tullis.' So I went ahead and prepared the instrument." (In the record there are periods after the capital J and the capital R, but it is possible that they were inserted by the court reporter.)

In cases similar to this one, where there is uncertainty or ambiguity in the designation of the beneficiary of a will, we have held that extrinsic evidence is admissible for the purpose of identifying the intended beneficiary. *McDonald v. Shaw*, 81 Ark. 235, 98 S.W. 952; *Duensing v. Duensing*, 112 Ark. 362, 165 S.W. 956. The attorney's testimony, to which there was no tenable objection in the court below,

convinces us that Minchew meant to disinherit this appellant when he left twenty-five dollars to J. R. Tullos. It cannot be doubted that the testator had one of his grandchildren in mind when he used the language in the will, "my grandson, J. R. Tullos." There was in fact no grandson whose initials were J. R. when the will was drafted in 1946. True, there is some evidence that the appellant had a twin brother named Julian Robert Tullis, but it is conceded that this infant died a few hours after his birth in 1925. In view of all the circumstances we cannot say that the probate court's decision is against the weight of the evidence.

Affirmed.