712

ESTEL STARNES *v.* NAOMI S. ANDRE ET AL

5-4364                               421 S. W. 2d 616

Opinion delivered December 11, 1967

*Shelby R. Blackmon* and *Billy B. Bowe,* for appellant.

*Wright, Lindsey & Jennings* and *Robert D. Cabe,* for appellees.

JOHN A. FOGLEMAN, Justice. This appeal comes from a probate court judgment setting aside its previous order admitting a certain paper writing to probate as the last will of Lillian Frances Starnes, deceased. Appellant is the surviving spouse and appellees are the surviving heirs at law. The judgment appealed from was rendered upon appellees' petition to contest the probate of the will based on allegations that the will had been revoked by the testatrix. After hearing the evidence, the court made a specific finding that the will was intentionally and effectively revoked by the decedent through her cancellation of it by writing the word ''void'' at the top of each page of the instrument and by placing cross marks through the provisions of each page.

Appellant urges two points for reversal. They are:

I.  The court erred in finding that the will of decedent was intentionally and effectively revoked.

II.  The court erred in failing to apply, in the alternative, the doctrine of dependent relative revocation.

To sustain his first point, appellant argues that: (1) the action taken does not constitute an intentional revocation even if done by the testatrix and (2) the preponderance of the evidence does not support the court's finding that it was done by the testatrix with that intention.

Certain facts are undisputed. After the burial of Mrs. Starnes on the afternoon of August 12, 1966, the day after her death, Mr. Starnes, her husband, and Jay C. Calloway, a certified public accountant who had been

serving her professionally since 1942 or 1943, went through her personal papers at the Starnes home. These papers were in a metal box which Mr. Starnes had at his home and brought to the dining room table. The box appeared to have been unlocked. Certain personal papers and letters were put in one pile and the "pertinent" papers in another. Mr. Starnes put those in the latter pile in a letter container similar to a brief case and Calloway advised him that he should take them to his attorney, Mr. Blackmon, whom they had called. No will was found at that time. On Monday, August 15th, Starnes took the papers he had put in the letter carrier to Calloway's office. The four sheets of paper alleged to constitute Mrs. Starnes' holographic will were then found folded inside a small envelope. The writing on these pages was the handwriting of the decedent. On the upper part of each of the first three pages the word "void" was written so that no part of the word touched any of the writing constituting the will. Over the face of each of the four sheets were cross marks commonly called X-marks and sometimes referred to at the hearing as "hatch" marks. On the first three pages there were two or more of these marks and on the fourth page there was a single elongated X-mark virtually as long as the written matter on the page. On the first three pages a few diagonal lines appeared, in addition to those necessary to form the X's. The first three pages were testamentary in nature and signed by Mrs. Starnes. The fourth page seems to have been a memorandum of property belonging to her. Mrs. Starnes had a custom or practice of marking an "X" through the writing on personal records and papers when she was through with them.

The statutory requirements for revocation of a will are set out in Ark. Stat. Ann. § 60-406 (Supp. 1967) which is a section of our probate code. Insofar as pertinent under these circumstances, a will can be revoked only:

"b. By being burnt, torn, cancelled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself or by another person in his presence and by his direction. If such act is done by any person other than the testator, the direction of the testator and the facts of such injury or destruction must be proved by two witnesses who are not benefited by the revocation of the will."

This provision has been virtually the same since the approval of the Revised Statutes on March 3, 1838. While the parties have cited cases from many jurisdictions as to the requisites for cancellation of a will, we need not go beyond our own statutes and decisions on two appeals involving the same will. *Cook* v. *Jeffett,* 169 Ark. 62, 272 S. W. 873; *Jeffett* v. *Cook,* 175 Ark. 369, 299 S. W. 389. While two wills were involved in those appeals, we are concerned with only the earlier one made by the testatrix in 1917, as that is the one as to which there was an issue as to revocation by cancellation. Certain words in two clauses of that typewritten will were interlined by running a pen, or pencil through certain of the words in these clauses in such a way that the typewritten words were not illegible. The court said:

"* * * [T]hat if the proof warrants the finding that these erasures were made by the testator or by her direction they operate only as a revocation of the parts of the will thus obliterated, * * *."

Since there was no direct evidence as to the custody of the will during the lifetime of testatrix and no direct proof as to who made the erasures or the circumstances under which the same were made, the court remanded the case for a fuller development of the facts without expressing any opinion as to inferences that might be drawn from the circumstances proved. On the second appeal, it was said that the will had been found with the personal effects of the testatrix after her death. The

judgment of the lower court finding the whole will to have been revoked was reversed and the case remanded with instructions to the trial court to enter a judgment to admit the will to probate. This court stated, however, that the testatrix had marked these words out and that the manner of marking or crossing them out plainly showed the intention of the testatrix to revoke her will insofar as these two clauses were concerned. In applying the opinion on the first appeal, this court said that its effect was to hold that if that which is essential to the validity of the whole will is cancelled or obliterated with the intention of revoking it, the whole will is revoked.

The writing of the word "void" on the pages of the will, together with the marks across the pages thereof in the manner and form used by Mrs. Starnes to cancel papers which had served their purpose, would justify the inference that it was done with the intention to revoke the will, if it was done by her.

Testimony was offered by appellant that the word "void" was in the handwriting of the testatrix. Calloway stated that he was familiar with her handwriting and thought that the word "void" was in her handwriting. Appellee Naomi S. Andre, a sister of Mrs. Starnes, stated that the word was definitely in her handwriting. Appellee Mavis Redmond, another sister, said that the word looked like her sister's handwriting. Camilla F. Watson, who had been employed by Mrs. Starnes as a waitress in 1942, had lived in the home of Mrs. Starnes and her first husband and had worked in Mrs. Starnes' liquor store, said that she was familiar with Mrs. Starnes' handwriting and that the word was written by her.

On the other hand, Juanita Henderson, an employee in Mrs. Starnes' liquor store since 1965, said that the word did not look like the handwriting of the latter, but she would not say positively that it was not. Lela Mae Crow said that she had worked in the liquor store for

ten years. She said the word was similar to that appearing on papers Mrs. Starnes had voided but that the "V" did not resemble Mrs. Starnes' work. Appellant's daughter testified that the word did not look like her stepmother's handwriting.

Certain exhibits were offered and identified by various witnesses to illustrate the manner of marking out written matter employed by Mrs. Starnes. Although the authenticity of some of these is questioned by appellees, we feel that the evidence that these exhibits, or at least most of them, are the handiwork of Mrs. Starnes is convincing. There is a striking similarity in the "cancelling" marks on these papers and those on the will pages.

We cannot say that the court's finding that the writing of the word "void" and the making of the marks across her holographic will were done by Mrs. Starnes with the intent to revoke it is clearly against the preponderance of the evidence.

Appellant seeks to discredit support of the court's finding by various attacks on the credibility of the witnesses on behalf of appellees. If there is any merit in any of these contentions, it is not sufficient for reversal of the trial judge who saw and heard the witnesses. Appellant also attacks the basis for the probate judge's finding by offering evidence tending to show that appellees or some of their witnesses might have had access to the will and made the marks found on it. He suggests, without introducing any evidence, that Calloway wanted to be administrator of the estate. Even if this were so, appellees are not helping him to realize that ambition, because they ask that Worthen Bank and Trust Company, the executor named when the will was admitted to probate, be named administrator. Their assault upon the testimony of Camilla Watson is based upon her admissions on cross-examination (1) that, thinking the deceased was making a mistake in planning to marry appellant in 1960, she asked Mrs. Starnes to think it over thoroughly and (2) that, in a pretrial in-

terview by appellant's attorney, she could have said that she would have voided the will if she had had the chance. Although the testimony might justify an inference that this witness was, in effect, a foster daughter of the decedent, she will take nothing if the will has been revoked. Under its terms, she and her husband and children would each receive bequests. Appellant suspects that this witness is engaged in some sort of collusion with appellees from which she would profit, but there is no evidence from which the drawing of such an inference can be justified. The attack on the credibility of the sisters of Mrs. Starnes is based on the apparent benefits to accrue to them by establishing the validity of the will. All these matters must certainly have been considered by the trial court and rejected.

The implications in support of the trial court's judgment, arising from the fact that the document in question was found among Mrs. Starnes' personal effects, are questioned by appellant who seeks to show that appellees might have had access to the will and attempted to cancel it. There can be little doubt that this document came from the metal box containing her personal papers which she kept in a closet in her bedroom. Mrs. Andre stayed in the Starnes home two nights and one day after her sister's death. She said that she only went through the Starnes bedroom to go to the bathroom. She denied knowing where her sister kept valuable papers or that there was any will. Mrs. Redmond also spent two nights there but denied being in the Starnes bedroom, although she admitted that she was not excluded from any part of the house. Mrs. Watson knew where Mrs. Starnes kept valuable papers and was at the house after the funeral. She asked appellant if he wanted her to get a policy out of the box, but he did not, even though he later brought the policies to her. She also denied knowledge of the existence of a will. One of appellant's witnesses testified that she could not tell the difference in the handwriting of Mrs. Starnes, of Mrs. Andre, and of Mrs. Watson. One of appellant's daughters also testified that the handwriting of the

three was similar. Appellant's daughters testified that the sisters had the run of the house, that Mrs. Watson was around the house both before and after the funeral and came to the house to help look for a will on the day after Starnes and Calloway had gone through the contents of the box, at which time she removed some of her daughter's clothing from the Starnes bedroom. Mrs. Andre admitted that appellant's mother saw her in the Starnes bedroom writing on a piece of paper. She claimed that she was writing down the name of a lawyer given her by Mrs. Watson as one that Mrs. Starnes had consulted. Mrs. Andre testified that Mr. Starnes told her he knew nothing about a will but knew that his wife wanted him to have the house and store and that the Watson daughter was to have $500.00.

The questions raised by this testimony have also been resolved against appellant by the trial court. We cannot say that this evidence preponderates. The mere fact that the will appeared, even in its obliterated condition, gives strong support to the court's finding. If Starnes denied knowledge of a will and did not produce one in the first search of papers with Calloway, it is much more likely that one bent on preventing the will taking effect would have destroyed it. On all of these questions of fact, we cannot overlook the failure of appellant to testify. The trial court must also have taken this into consideration in weighing the evidence. Failure of a party to an action to testify as to facts peculiarly within his knowledge is a circumstance which may be looked upon with suspicion by the trier of the facts. *Fordyce* v. *McCants,* 55 Ark. 384, 18 S. W. 371; *Broomfield* v. *Broomfield,* 242 Ark. 355, 413 S. W. 2d 657. His failure to testify gives rise to the presumption that his statements would have been against his interest. *Cady* v. *Guess,* 197 Ark. 611, 124 S. W. 2d 213.

Appellant also argues that we should reverse the judgment because of failure of the trial court to apply the doctrine of dependent relative revocation. This doctrine is applied to render ineffective a will revocation

made with a present and clear intention of the testator to make a new disposition as a substitute when the new disposition is not made or is ineffective. It seems to be based upon a presumption that a testator, under the circumstances, would prefer the revoked will to intestacy. This contention appears to be based upon the rather nebulous testimony of one witness that in 1965 Mrs. Starnes said she had not had time to go by and sign her will. Another witness stated that in April 1966, Mrs. Starnes said she had her will made out some time ago. Appellant has not indicated any application of this doctrine in Arkansas, nor do we know of any. We cannot find any facts which would justify its application here.

The judgment is affirmed.

JONES and BYRD, JJ., disqualified and not participating.