Mary Juanita Myers Hardy v. Bertie Myers Porter

5-4754                                434 S.W. 2d 61

Opinion Delivered November 25, 1968

*Fletcher Long* for appellant.

*Lawson Glover; John Mann* and *Carroll C. Cannon* for appellees.

Conley Byrd, Justice. The probate judge found that the real estate description in paragraph 3 of the first codicil to Mrs. Mattie Pipkin Smith's will was defective and refused to amend the description to conform to the description that the testatrix allegedly gave to her lawyer. Appellant Mary Juanita Meyers Hardy, the sole beneficiary of paragraph 3 of the codicil, appeals alleging that the probate court erred in declaring void paragraph 3 of the codicil.

Paragraph 9 (b) of the will, executed on August 22, 1953, provides:

"Upon the death of the last surviving of my said sisters and brother, my niece Mary Myers Hardy, or her natural lawful children in equal shares if she be not then surviving, shall have in fee title absolute that certain one hundred (100) acres upon which my deceased husband, W. I. Pipkin built our home, the same being bounded:

On the north by the Old Lockett Place (since owned by Merritt or Grobmyer and more recently by Hammond)

On the east by Tuni Creek

On the south by the Old Garner Place (now owned by Buford, I believe) and

On the west by the gravelled road which runs southerly or southwesterly from Crow Creek to Old Linden.''

The codicil executed on December 4, 1956, provides:

''3. In paragraph 9 (b) of my said last will and testament I devised to my Niece Mary Juanita Myers Hardy or to her lawful natural children if she should not survive me, a remainder title in fee to the tract of land by boundaries which I then estimated to contain about one hundred (100) acres. I am convinced now that those boundaries would not contain 100 acres, and I do hereby amend the description therein given by addition to that description the following, whether it shall make a total more or less than 100 acres, to-wit:

From the Northwest corner of the description in said paragraph 9 (b) run northwesterly in the West (or Southwesterly) line of Survey No. 2390 to the east line of the tract of land described in Deed from Hazel Powers and others to Oscie Hardy and Mary Hardy, dated September 29, 1956, and recorded at page 199 of Deed Record 202 in St. Francis County; thence South along the east line of said tract of land to the east and west center-line of Section 29, Township 4 North, Range 4, East: thence southeasterly to the Northwest corner of Survey No. 2413; thence northeasterly in the North (or Northwest) line of said

Survey No. 2413 to the Southwest corner of Survey No. 2390; thence Northwesterly in the West (or Southwesterly) line of said survey No. 2390, to the point of beginning,

which said additional tract is hereby given and devised in all respects the same as, and together with, the tract described in paragraph 9 (b) of my said Last Will and Testament.''

The record shows that Mrs. Mattie Pipkin Smith owned several hundred acres of land in T 4N, R 4E, some of which were held by United States Government survey descriptions and some of which were described according to ''private surveys'' numbers 2390 and 2413. For assistance in following the descriptions, the plat below is included showing the lands of Mrs. Mattie Pipkins Smith bounded by the heavy lines. The lands devised to appellant by paragraph 9 (b) of the will are shown in the shaded area.

For purposes of locating the lands devised in paragraph 9 (b), there was proof introduced showing the location of the Hammond property, the Buford property, Tuni Creek and the gravel road. In her brief, appellant admits that the description of the land purportedly devised in the codicil actually describes nothing. Taking the most favorable proof to appellant as to the location of the NW corner of the property described in paragraph 9 (b) of the will as the point of beginning, one cannot follow the land calls given in the codicil so that the description will close. To remedy this defect appellant relied upon the testimony of her husband, who went to the lawyer's office with the testatrix for the purpose of assisting her in drawing the codicil. From notes he made in the lawyer's office at the time the codicil was drawn, Mr. Hardy gave a description which would describe some 150 acres and which does not purport to be an explanation of the description, or any of the terms used in the codicil.

In *McDonald* v. *Shaw*, 92 Ark. 15, 121 S.W. 935 (1909), it was shown that Mary A. Hare had devised "one-half of all of my estate" to the Catholic Church for the purpose of taking care of her imbecile daughter, Ella Hare. The record further shows that Ella Hare was a pretermitted child under the will of her father, John Hare. Since John Hare's will left all of his lands to Mary Hare, proof was sought to be introduced to show (for purposes of requiring Ella's guardian to make an election) that the described "one-half of all my estate" included the lands devised by the will of John Hare. In holding that such proof could not be introduced, we said:

"In the present case the devise was for the benefit of Ella Hare, and was in the language, 'one-half of all of my estate,' and the testator owned property which fitted the language. We find it nowhere announced that evidence is inadmissible to show the circumstances with which the testator

was surrounded in order to explain the language which he used or to identify property which he intended to devise. But the description of the property cannot be entirely supplied by evidence dehors the will, where there is nothing in the language of the will itself to point out what property is meant; nor where the language does point out the property, and some is found which answers the description, can the description be enlarged by parol testimony. We are therefore of the opinion that the parol testimony was inadmissible for the purpose of showing that Mrs. Hare intended to convey the property which Ella Hare held by inheritance from her father, and that no case was made out for an election.''

Appellant, however, contends that such proof is admissible under our decision of *Eagle* v. *Oldham,* 116 Ark. 565, 174 S.W. 1176 (1915). However, in *Jackson* v. *Wolfe,* 127 Ark. 54, 191 S.W. 938 (1917), in answer to a similar contention, we said:

''Counsel for plaintiff insist that the case comes within the rule of this court announced in *Eagle* v. *Oldham,* 116 Ark. 565, and that under the rule there announced the will of Isaac Adair ought to be construed as devising the north half of the northwest quarter of Section 21, instead of the south half of the northwest quarter of said section, as set forth in the will. The doctrine of the case relied on is stated in the opinion as follows: 'But while we may feel sure of the testator's intention, we must gather that intention from the will itself. This idea has been expressed in a variety of ways by all the courts. But extrinsic evidence is generally held admissible in the interpretation of wills, not to show what the testator meant, as distinguished from what his words express, but for the purpose of showing the meaning of the words used.'

"There were circumstances in that case surrounding the execution of the will which enabled the court to correct what was deemed by the majority of the judges to be an obvious error, but the rule stated above was adhered to. In the present case we find no circumstances whatever which would justify this court in declaring that the testator meant by the description used, to convey a tract other than the one which was specifically described. This tract was the homestead of the testator, and his wife had a life estate in it by operation of law, and that may have been the reason why the testator omitted it from the devise to her. To hold with the plaintiff in this case would be purely a reformation of the instrument, which in all the cases on that point this court has held could not be done."

Here the language of the codicil does not point out the property devised nor does the testimony of Mr. Hardy enable this court to correct an obvious error by placing it in the position of the testatrix. It may be that the testatrix intended to convey the lands described by Mr. Hardy, but we are not at liberty to write the will as the testatrix may have intended. All of the cases are to the effect that oral testimony is admissible for the purpose of showing the meaning of words used or for the purpose of placing the court in the position of the testator at the time of using the words, but no case has gone so far as holding that oral testimony is admissible for the purpose of showing what the testator intended. Therefore, we hold that the language of paragraph 3 of the codicil is defective for lack of a valid description.

Affirmed.