John BAKOS, Kenneth BAKOS and
Ronald BAKOS, Heirs at Law of
Mayme (May) Bakos GAFFNEY, Deceased
*v.* William Howard KRYDER and Raymon
LEDWIDGE, Co-executors of the Estate of
Mayme (May) Bakos GAFFNEY, Deceased

76-103                                  543 S.W. 2d 216

Opinion delivered November 8, 1976
[Rehearing denied December 13, 1976.]

*Harry E. Cook Jr.* and *Ray S. Smith Jr.,* for appellants.

*Evans, Farrar, Patterson & Farrar,* for appellees.

ELSIJANE T. ROY, Justice. Mayme (May) Bakos Gaffney, a resident of Garland County, died testate on July 16, 1972. Her will, dated January 31, 1972, and an instrument purporting to be a holographic codicil[1] were duly admitted to probate, and William Howard Kryder and Raymon Ledwidge, the designated co-executors, qualified and were duly appointed.

---

[1] The codicil is not at issue herein.

The will provided for numerous charitable dispositions and the establishment of a fund, known as the Bakos Fund, for the benefit of certain children in the Hot Springs Children's Home. Appellants, the sole heirs at law of decedent, filed a petition for construction of the will alleging for various reasons the Bakos Fund and bequests were illegal and that consequently a large part of the estate must pass by intestacy to them. The probate court held the bequests involved were. valid and that the fund established by decedent constituted a charitable trust for the benefit of the intended recipients.

As to the bequests appellants contend there is no language in the will signifying that the testatrix intended that *any* portion of her estate should be paid to the named organizations. This contention is answered by a mere reading of pertinent parts of the will.

I. I hereby constitute Rev. Wm. Kyrder and Raymon Ledwidge to be co-executors of this my Last Will and Testament directing my said co-executors to *pay* all my just debts and funeral expenses, and *the legacies hereinafter given*, out of my estate [italics supplied].

II. Hot Springs Children's Home:-5%

III. Good Shepherd's Children's Home, Hot Springs, Arkansas:-5%

IV. Hillcrest Children's Home, Hot Springs, Arkansas:-5%

V. Little Rock Crippled Children's Home, Little Rock, Arkansas:-5%

VI. Shriners Crippled Children's Home:-5%

VII. Salvation Army, Hot Springs:-2%

VIII. Abilities Unlimited:-2%

IX. Heart Fund:-2%

X. Cancer Fund:-2%

XI. United Fund:-2%

As is evident the testatrix in Article I of the will directed that the "legacies hereinafter given" be paid out of the estate and then indicated the percentage each named organization was to receive.

The instruction to an executor to pay a legacy is indicative of a donative intent; the exact words "give and bequeath" are not necessary. See *Hamel* v. *Springle, Adm'r,* 237 Ark. 356, 372 S.W. 2d 822 (1963).

Furthermore, in construing a will we are mindful that:

. . . [A] will should be given that construction which accomplishes the purposes and objectives of the testator and, further, that consideration must be given to every part of the will in ascertaining the testator's intentions. *Walt* v. *Bevis,* 242 Ark. 644, 414 S.W. 2d 863 (1967).

*Carroll* v. *Robinson, Executor,* 248 Ark. 904, 454 S.W. 2d 329 (1970). Thus there is no merit to this contention.

Appellants next contend the lower court erred in holding that the will created a valid charitable trust. Pertinent provisions of the will read as follows:

XII. I hereby establish a fund to be called "The Bakos Fund." The co-executors of this Will are to pay each child, who departs from the Hot Springs Children's Home, $100.00 upon such departure when the child reaches the age of eighteen (18). This age of eighteen is to be flexible depending upon the recommendation of the manager of the children's home and the agreement of my co-executors. The departing child must be of good character. If the departing child, in his struggle to improve himself and to find a proper place for himself in society, is in need of an additional $100.00, then the co-executors shall pay the $100.00 to the said child if, in their judgment, it would be a prudent step to take.

XIII. The last hereinabovementioned procedures shall be continued *until all of the funds of my estate have been depleted* or until the estate must be closed in accordance with the laws of Arkansas regarding the number of years that an estate is permitted to be kept open [italics supplied]. If it does become necessary to close the estate, while there are still funds therein, Rev. Wm. Kyrder and Raymon Ledwidge shall become co-trustees of my savings account at First Federal Savings and the disbursements to the children departing the Hot Springs Children's Home shall be continued until the Bakos Fund, in the form of a savings account at First Federal Savings is depleted. * * *

Appellants argue as to these foregoing provisions that the class of recipients created is so indeterminable that none of the class members can be ascertained with the legal certainty necessary to create a valid trust. We cannot agree. The fact that the class is indefinite in the sense that it lacks specifically designated beneficiaries does not invalidate a charitable trust. As long ago as *McDonald* v. *Shaw*, 81 Ark. 235, 98 S.W. 952 (1906), this Court in speaking of charitable trusts, quoting from the case of *Russell* v. *Allen*, 107 U.S. 163, 2 S. Ct. 327, 27 L. Ed. 397 (1882), said:

. . . "They may, and indeed, must, be for the benefit of an indefinite number of persons; for, if all the beneficiaries are designated, the trust lacks the essential elements of indefiniteness, which is one characteristic of a legal charity."

Continuing the Court quoted 2 Perry on Trusts, § 732, as follows:

". . . Uncertainty as to the individual beneficiaries is characteristic of a charitable use."

See also Restatement (Second) of Trusts, § 364 (1959) and 15 Am. Jur. 2d Charities, § 93 (1964). Here no uncertainty inheres in the class designated by the Fund. The discretion left to the appellees, co-trustees of the Fund, is confined to selecting qualified recipients from within a class certain, and we conclude that the class defined by the Fund does not fail for

lack of specificity.

Appellants also contend, under this same argument, that the Fund lacks a charitable purpose, that there is no guarantee the children in the Home are all impoverished, and that it contravenes the rule against perpetuities. The record reflects most of the children are from homes that are impoverished and all are there because of unfortunate circumstances. Furthermore, as heretofore indicated, disbursements are left in part to the discretion of the co-trustees.

Restatement (Second) of Trusts, § 374 (1959), provides:

A trust for the promotion of purposes which are of a character sufficiently beneficial to the community to justify permitting property to be devoted forever to their accomplishment is charitable.

Continuing in this section we find:

A trust to assist young men or women to establish themselves in life is charitable; . . . .

Relief of poverty is also a charitable purpose. See *McDonald* v. *Shaw, supra.* The Bakos Fund was established to pay $100 and possibly another $100 to the departing 18 year old resident as he left the home and to aid ". . . in his struggle to improve himself and find a proper place for himself in society, . . . . " This purpose is unquestionably beneficial to the community since society has a valid interest in the productive integration of its citizenry.

As to the rule against perpetuities, in *Garrett* v. *Mendenhall, Executor,* 209 Ark. 898, 192 S.W. 2d 972 (1946), the Court held that a devise to the trustees of a certain church is a devise creating a trust for charitable use for the benefit of an indefinite number of persons and does not fall within the rule against perpetuities. See also *Bisco* v. *Thweatt,* 74 Ark. 545, 86 S.W. 432 (1905).

The decedent's will instructed appellees that the payments therefrom were to be distributed "until the funds of my estate have been depleted or until the estate must be clos-

ed in accordance with the laws of Arkansas regarding the number of years an estate may remain open." Appellants insist that since there is no law in Arkansas specifying the number of years an estate may remain open, a condition precedent to the trust is not met. Ark. Stat. Ann. § 62-2802 (Repl. 1971) requires the personal representative to close the estate as promptly as practicable. Thus the provision of the will is in complete harmony with the statute. Restatement (Second) of Trusts, § 365 (1959) states:

> A charitable trust is not invalid although by the terms of the trust it is to continue for an indefinite or an unlimited period.

Accordingly, we find the trial court was correct in holding that the will creates a valid trust.

The court then found the trust was funded by the residuary estate of the testatrix after deduction of debts, expenses and the charitable bequests totaling 35% of the estate. Appellants argue this conclusion is erroneous and that the residuary estate must pass to them as heirs since no funding was provided by the will for the Bakos Fund.

In *Rufty* v. *Brantly*, 204 Ark. 32, 161 S.W. 2d 11 (1942), we noted a strong presumption against partial intestacy unless the language of the instrument compels a different result. See also *Bradshaw* v. *Pennington, Administrator*, 225 Ark. 410, 283 S.W. 2d 351 (1955).

Appellants contend that if the alleged charitable trust is found valid the funding must be restricted to the savings account in the First Federal Savings. We view the reference to a savings account at First Federal Savings as not being so restrictive. The intention of the testatrix is evidenced by the statement in Article XIII that the trust shall "continue until all of the funds of my estate have been depleted." Also, the testatrix directed that if funds remained in the estate when it was closed, the Bakos Fund was to be continued "in the form of a savings account" with appellees to be co-trustees to handle disbursements therefrom. Thus it is evident the intention of the testatrix was that the First Federal Savings account was to serve as a depository for the residue of

the estate pending distribution to the youth at the Children's Home.

As further indication of the testatrix's intent that residuary sums go to the Bakos Fund and not to any of her heirs we note the following provisions of the will:

XVIII. I bequeath to my brother John and his daughter, Ellen Poat, share and share alike, as joint tenants with right of survivorship and not as tenants in common, all of my share in my sister's home *provided the home has not been sold and the proceeds divided prior to my demise* [italics supplied].

XIX. I bequeath to each of my relatives, with my thanks, the sum of five and no/100 ($5.00) Dollars, *when as and if they make claims* [italics supplied].

XX. My sincerest thanks and God's blessings to you two gentlemen whom I have named as my co-executors of this Will and *my co-trustees of my savings account at First Federal Savings which, after my death, and after the closing of my estate, is to be used for the benefit of the children departing from the Hot Springs Children's Home* [italics supplied]. You both have made my rough road here a little smoother and a little brighter and I know you both will try to make the road brighter for the aforementioned children who may be in need of a friend, as I was.

These provisions clearly reflect that the testatrix, contrary to appellants' assertions, did not intend that any part of her estate should pass intestate, but meant for all funds except the specific legacies to become a part of the charitable trust, as determined by the trial court.

Affirmed.

We agree. FOGLEMAN, BYRD and HOLT, JJ.