Elizabeth ARMSTRONG *v.* Betsy
Martindale BUTLER et al

76-256                                          553 S.W. 2d 453

Opinion delivered July 11, 1977
(Division II)

32

*Joe H. Purcell, Stark Ligon* of *Smith & Peters,* and *David L. Armstrong,* Louisville, Ky., for appellant.

*J. L. Kidd,* of *Dodds, Kidd & Ryan* and *Wayne R. Foster,* for appellees.

JOHN A. FOGLEMAN, Justice. Anna Elizabeth Love Evans died testate May 22, 1972, leaving surviving her as her heirs

at law, her daughter, Anna Elizabeth Armstrong and three grandchildren, Betsy Martindale Butler, Nancy Martindale Tolleson and Jud B. Martindale, Jr., the children of a deceased daughter, Gwendolyn Martindale. Mrs. Evans left a will dated April 30, 1970, which was duly attested, authenticated and admitted to probate on June 16, 1972, without notice, upon the petition of Mrs. Armstrong, who was named as executrix in the will and appointed as such. The grandchildren above named were listed as heirs in the petition for probate. The executrix filed a final accounting on March 21, 1974, which was approved by the probate court on March 25, 1974. The court's order of approval recited that appellant had distributed the assets of the estate. It discharged the executrix. The will probated read, in pertinent part, as follows:

That I, Anna Elizabeth Love Evans, being of sound and disposing mind and memory do hereby make, publish and declare this to be my last will and testament, hereby revoking any and all other wills by me at anytime heretofore made.

1. I hereby nominate, constitute and appoint my daughter, Anna Elizabeth Armstrong, now living at 624 West Main, Madison, Indiana, as sole executrix hereof, without bond.

2. I hereby direct that all my just debts and funeral expenses be paid as soon after my death as possible.

3. I hereby give, bequeath and devise to my daughter, Anna Elizabeth Armstrong, and unto her heirs and assigns forever, all of my property, both real and personal, regardless of where located.

The grandchildren, who were the children of the deceased daughter, and heirs of the testatrix, were nowhere mentioned in the will, either by name or as a class.

On September 12, 1975, appellant, apparently as executrix, although she had been discharged as such, activated by a suit by the named grandchildren, as pretermitted heirs, for the partition of real estate, filed her petition for the

reopening of the estate, the reappointment of appellant as executrix, and a direction to her as personal representative to carry out the wishes of the testatrix expressed in an alleged holographic will dated March 21, 1967. This purported will was attached to the petition. Although appellant was probably proceeding under the provisions of Ark. Stat. Ann. § 62-2122(a) (Repl. 1971), there was no prayer that the original order of probate be reopened or that the document presented be admitted to probate.[1]

The instrument presented was an unusually odd one, even for a "homemade" will. It was satisfactorily shown that the two pages of which it consisted were both in the handwriting of the testatrix. The ink used on the two pages is obviously of different colors and it is clear that the words, "Signed" and "March 21, 1967", on the second page are in ink which is a different shade of blue from that in which the text of that page is written. The top page, as the instrument was presented, reads as follows:

Last Will and Testament

I, Elizabeth Love Evans of Hempstead County, Arkansas, being over the age of twenty-one years and of sound and disposing mind and memory, do hereby make, publish, and declare this to be my Last Will and Testament, hereby revoking all wills heretofore made by me at any time.

1. I direct that all my just debts be paid as speedily as possible.

2. I give, devise and bequeath, after the payment of my just debts, all the rest and residue of my estate, real, personal and mixed and wheresoever situated to my daughter, Elizabeth Evans Armstrong.

March 21, 1967.

On the bottom page, the following appears:

---

[1] In this connection, see Ark. Stat. Ann. § 62-2116(b) & (c) (Repl. 1971).

Betsy Martindale    )
Nancy Martindale  )Children of my deceased daughter,
Jud Martindale, Jr.)Gwen Evans Martindale

Since the death of their mother, these children have
shown no consideration for me as their maternal grand-
mother — so I do not include them in my will.

Signed:

March 21, 1967.

The probate judge, over objections of the appellees,
authorized the reopening of the estate, found that the instru-
ment dated March 21, 1967 (both pages) was a holographic
testamentary instrument, that it was not newly discovered
evidence, that the formal will and the holographic one should
not be considered as one instrument, that the later will revok-
ed the earlier one, that appellees were pretermitted heirs, that
the doctrine of dependent relative revocation, if accepted in
Arkansas at all, was not applicable in this case and that the
proffered holographic will came too late.

Appellant first contends that the probate court erred in
holding that appellees were pretermitted children and en-
titled as such to recover from the devisees in the 1970 will un-
der Ark. Stat. Ann. § 60-507(b) (Repl. 1971). Appellant
points out that the purpose of the statute is to insure that
there be no unintentional disherison of a child or issue of a
deceased child and to guard and provide against testamen-
tary thoughtlessness. She makes the rather novel argument
that appellees were not omitted form the 1970 will by its
revocation of all prior wills and that the 1967 will clearly
shows that there 'was an intentional disherison and not
testamentary thoughtlessness, because the earlier instrument
showed that Mrs. Evans intended that appellees take nothing
and stated her reasons.

We simply cannot accept this ingenious argument.
Nothing could be clearer than the language of the revocation
in the 1970 instrument. But appellant contends that Ark.
Stat. Ann. § 60-507(b) has been broadened by judicial inter-

pretation in *Kinnear* v. *Langley*, 209 Ark. 878, 192 S.W. 2d 978. We do not agree that this decision broadened the effect of the statute sufficiently to support appellant's argument, or to overcome the impact of Ark. Stat. Ann. § 60-408 (Repl. 1971). That section provides that no part of any revoked will can be revived without re-execution, or the execution of another will in which the revoked will or portion thereof is incorporated by reference.

In the first place appellant argues that under *Kinnear*, the revocation in the 1970 will constituted a specific reference to the 1967 will. The holding does not support this argument. Under *Kinnear*, it was held that an existing instrument can be incorporated into a will by reference. It was clearly pointed out there, however, that the extrinsic instrument must be definitely identified in the will into which it is to be incorporated. See also, *Montgomery* v. *Blankenship*, 217 Ark. 357, 230 S.W. 2d 51, 21 ALR 2d 212; Comment, Wills — Incorporation By Reference Pretermitted Child Statute, Bowe, 1 Ark. L. Rev. 180; Case Note, Wills, Incorporation of Extrinsic Documents by Reference, 6 Ark. Law Rev. 496. By no stretch of the imagination can we say that the general language of the 1970 will definitely identifies the 1967 instrument. The revocation clause refers to "any and all wills by me at any time heretofore made". Furthermore, the reference must clearly show the testator's intention to incorporate the existing document. 2 Page on Wills (Bowe-Parker Revision) 88, 112, §§ 19.18, 19.30; 79 Am. Jur. 2d 423, Wills § 202; 94 CJS 954, Wills, § 163.

Revocation is the antithesis of intention to incorporate. As applied to a will, to revoke is to recall, cancel, set aside, annul, nullify, set at naught, declare null and void. *Ford* v. *Greenawalt*, 292 Ill. 121, 126 N.E. 555 (1920); *In re Barrie's Will*, 393 Ill. 111, 65 N.E. 2d 433 (1946); *In re Walters Estate*, 60 Nev. 172, 104 P. 2d 968 (1940). Ordinarily, a revocation in toto by express declaration amounts to annulling, voiding or invalidating the prior instrument. *Jackson* v. *Cannon*, 266 S.C. 198, 222 S.E. 2d 494 (1976). "[H]ereby revoking any and all wills by me at any time heretofore made" had a clear, definite and unmistakable meaning.

Appellant seeks to avoid the effect of the express revoca-

tion of all prior wills, again on the reasoning of *Kinnear v. Langley,* 209 Ark. 878, 192 S.W. 2d 978, wherein it was held that a codicil revoking a section of a prior will did not have the effect of making a daughter referred to in the revoked section a pretermitted child. There is a great distinction in the effect of a revocation of a will in toto and a codicil. That distinction is apparent from the language of our opinion in *Kinnear.* There we said:

A codicil is not an entirely new will. A codicil is, rather, a postscript to the will showing something added by the testator to the original document. Just as a postscript to a letter may show a new idea of the writer or a change, or amendment to a thought, expressed in the letter: so a codicil may express a new bequest or a change or modification of a bequest in the will. Just as the postscript does not physically or literally erase or expunge whatever it affects in the letter: so, also, the codicil does not physically or literally erase or obliterate whatever it affects or changes in the original will. The will is probated along with the codicil; together they constitute the "last will and testament" of the testator or testatrix.

. . . A section of a will does not literally and physically cease to exist merely because the section is revoked in the codicil. The revoked section continues to be in actual existence, but is given no effect in construing or interpreting the will, since the codicil revokes the section. In some of the cases construing and interpreting wills, there may be found statements to the effect that, when a section in a will has been revoked by a codicil, the testament is construed as though the revoked section did not exist. Such statements are true in construing and interpreting wills and testaments, but these statements do not mean that the revoked section of the will does not exist in fact. The revoked section is not obliterated: it is merely rendered nugatory.

Appellant also relies on testimony of her husband, some of the appellees, her own testimony and that of the scrivener to show that Mrs. Evans had not changed her mind about her

grandchildren when she made the 1970 will. The scrivener simply testified that Mrs. Evans did not mention or discuss these grandchildren in any way or the revoking of any previous will but did tell him she wanted appellant to have everything. This testimony was not sufficient to overcome the presumption that Mrs. Evans knew the contents of the will she executed. See *Meek v. Bledsoe,* 221 Ark. 395, 253 S.W. 2d 369.

The intention of a testator is to be gathered from the four corners of the instrument itself, considering the language used and giving meaning to all its provisions, if possible to do so. *Walt v. Bevis,* 242 Ark. 644, 414 S.W. 2d 863. The intention of the testator as expressed in the language of his will prevails if consistent with the rules of law. *Lewis v. Bowlin,* 237 Ark. 947, 377 S.W. 2d 608. We must assume that Mrs. Evans knew what the words in the revocation clause meant and that she was aware of the clause. The courts must apply the clause according to its legal effect and not make a will for her, which might be more nearly in accordance with the testator's expressed intentions. *Lewis v. Bowlin, supra.* Oral testimony is admissible for the purpose of showing the meaning of words used when they are ambiguous, but not to show what the testator intended, as distinguished from his express words. *Vaught v. Vaught,* 247 Ark. 52, 444 S.W. 2d 104; *Hardy v. Porter,* 245 Ark. 729, 434 S.W. 2d 61. It is true that if there is uncertainty about the intention of the testator when the words of the will are considered in their ordinary sense, the court must read language in the light of circumstances existing when the will was written including relationships with his family and the beneficiaries named, the motives which may be reasonably supposed to influence him and other such matters. *Martin v. Simmons First National Bank,* 250 Ark. 774, 467 S.W. 2d 165. Extrinsic evidence was not admissible to show that the testatrix intended to disinherit a pretermitted child. *Hare v. First Security Bank,* 261 Ark. 79, 546 S.W. 2d 427. See also, *Duensing v. Duensing,* 112 Ark. 362, 165 S.W. 956.

Our statute (§ 60-507) is of the "Missouri type" which operates in favor of the pretermitted child without regard to the real intention of the testator in regard to the omission. 79 Am. Jur. 2d 735, et seq., §§ 643, 644. Under such a statute, extrinsic evidence of the testator's intent is not admissible. 79

Am. Jur. 2d 739, § 645. There simply was no occasion to consider extrinsic evidence of the circumstances. By the clear words of the 1970 will, Mrs. Evans revoked any and all wills previously made and parol testimony could not be used to show that she meant something entirely different.

Appellant also argues that we should adopt the doctrine of dependent relative revocation. There is no place for the application of the rule here, as we understand it. In *Starnes* v. *Andre,* 243 Ark. 712, 421 S.W. 2d 616, we stated that this doctrine is applied to render ineffective a will revocation made with a present and clear intention of the testator to make a new disposition as a substitute, when the new disposition is not made or is ineffective; and is based upon the presumption that a testator, under the circumstances, would prefer the revoked will to intestacy. We said that we did not then know of the doctrine having been applied in Arkansas and we do not now. Here, as there, we are unable to find facts to justify its application. If Mrs. Evans remembered the 1967 will sufficiently to intend to incorporate it and still intended that her grandchildren be disinherited, it is difficult to see why she would make a new will and eliminate any mention of them and the reason for their disinheritance, and yet make exactly the same disposition as she made in the earlier will, unless she had, indeed, forgotten either the grandchildren or any reason for disinheriting them. Mrs. Evans certainly knew the necessity for specifically disinheriting these grandchildren in 1967. She must not have felt as strongly about the matter in 1970 as she did in 1967. It is unlikely that she would have forgotten this necessity if she had. Revocation is indicative of a change of mind about some feature of the revoked instrument.

Appellant points out that her argument is harmonious with the general rule that, if possible, a will should be construed so as to avoid partial intestacy. This is an artificial rule of construction, created judicially, to be resorted to when the intent of the testator cannot be determined by giving the words used their usual meaning. *Cross* v. *Manning,* 211 Ark. 803, 202 S.W. 2d 584. It has no application when the language of the instrument compels a different result. *Bakos* v. *Kryder,* 260 Ark. 621, 543 S.W. 2d 216. Furthermore, opposed

to that aid to construction is the statutory presumption against the disherison of a child or the issue of a deceased child. The statutory presumption is at least as great weight as the rule of construction, if the latter is even applicable. *In re Werlich,* 230 N.Y. 516, 130 N.E. 632 (1921); *Jacobsen v. Farnham,* 155 Neb. 776, 53 N.W. 2d 917, 33 ALR 2d 543 (1952); *In re Bigony's Estate,* 397 Pa. 102, 152 A. 2d 901 (1959). Although there is a split of authority as to which should prevail, the better view seems to be that the presumption against intestacy should at least be no stronger than the presumption against disherison. *Jacobsen v. Farnham, supra; Nichols v. Todd,* 20 Tenn. App. 564, 101 S.W. 2d 486 (1936). It has been held that where the two conflict, the will should be interpreted without regard to either. *In re Loving's Estate,* 159 Pa. Super. 339, 48 A. 2d 39 (1946). *In re Bigony's Estate, supra.* It seems logical that the presumption against intestacy should be subordinate in Arkansas, because Ark. Stat. Ann. § 60-507 goes much further than creation of a presumption. It states the effect of omission of a child or the issue of a deceased child in clear and distinct language, without admitting of any exception. In any event, neither "presumption" will be permitted to overcome the intention of the testator as expressed in plain words or as it appears by clear implication. *In re Walker's Estate,* 376 Pa. 16, 101 A. 2d 652 (1954); *In re Bigony's Estate, supra.* An express revocation clause is ordinarily operative even if the effect of the later will and the revocation of the earlier one results in a partial intestacy. 2 Page on Wills 410, § 21.42.

Another factor that militates against the application of the doctrine is the fact that pretermitted children are said to take under the will from which they have been omitted, not against it. *Trotter v. Trotter,* 31 Ark. 145. See also, *Farmers Cooperative Ass'n. Inc. v. Webb,* 249 Ark. 277, 459 S.W. 2d 815, *Yeates v. Yeates,* 179 Ark. 543, 16 S.W. 2d 996. It is only rendered ineffectual when the omitted persons are the only surviving descendants who would be heirs at law. See *Crossett Lumber Co. v. Files,* 104 Ark. 600, 149 S.W. 908; *Bloom v. Strauss,* 70 Ark. 483, 69 S.W. 548, 72 S.W. 563.

The decree is affirmed.

We agree: HARRIS, C.J., and ROY and HICKMAN, JJ.